1
2
3
4
**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
5
6   DONALD YORK EVANS, et al.,                )        3:08-CV-0353-GMN (VPC)
                                              )
7            Plaintiffs,                       )
                                              )
8        vs.                                   )        **ORDER**
                                              )
9   HOWARD SKOLNIK, et al.,                   )
                                              )
10           Defendants.                       )
    _____   )
11
12          Before the court is the motion of defendants, Howard Skolnik, Don Helling, William Donat,

13   Brian Henley, and Lea Baker ("defendants") for case terminating sanctions (#190).  Plaintiff, Donald

14   York Evans, ("Mr. Evans") opposed (#192) and defendants replied (#196).

15       **I.    Procedural History**

16          On June 26, 2008, John Witherow ("Mr. Witherow"), an inmate incarcerated at the Nevada State

17   Prison during the events giving rise to his complaint, and his attorney, Mr. Evans, filed a complaint

18   alleging that prison officials and defendant, Inmate Calling Solutions ("ICS"), improperly monitored

     attorney-client phone telephone calls in violation of constitutional and federal statutory rights (#2).  In
19
     December 2008, plaintiffs filed a first amended complaint ("FAC") adding Global Tel Link Corporation
20
     ("GTL") and Embarq Pay Phone Services, Inc. ("Embarq") as parties (#33).  Mr. Evans dismissed his
21
     claims against ICS with prejudice (#62), and the court later granted GTL's and Embarq's motions to
22
     dismiss as to Mr. Evans (#117; 122).  The court also granted the motions of ICS, GTL, and Embarq to
23
     dismiss as to Mr. Witherow.  *Id.*  The only remaining defendants are employees of the Nevada
24
     Department of Corrections ("NDOC").
25
            At a February 9, 2010 status conference (#148), Mr. Evans, through his then counsel, Marc
26
     Picker, Esq., advised that he was proceeding under the first amended complaint (#33).  Mr. Witherow,
27
     who by this time represented himself *in pro se,* advised that he was proceeding under the second
28

amended complaint (#80).[1]   On March 8, 2010, this court granted Mr. Evans's motion to substitute James Andre Boles, Esq. as his counsel (#155).  The parties proposed a second amended discovery plan and scheduling order, which the court approved with the caveat that discovery would be completed by September 13, 2010, and that no extensions would be granted (#164).  However, on August 2, 2010, Mr. Witherow asked for an additional 180 days for discovery for leave to file a proposed third amended complaint (#169).  The court granted a brief extension of time to complete written discovery and take depositions, and set a final discovery cutoff of October 28, 2010, but denied leave to file a third amended complaint (#175). The court emphasized that no further extensions of discovery would be granted.  *Id.*

On August 10, 2010, defendants served Mr. Evans with a request for production of documents and three sets of interrogatories propounded by defendants Skolnik, Helling, and Henley (#184, Exs. B, C, D & E).  Mr. Boles and Mr. Evans agreed that Mr. Evans could speak directly with Mr. Simon, defendants' counsel, about the pending discovery, and on August 26, 2010, Mr. Evans and defendants' counsel did so (#184, Ex. A).  Messrs. Simon and Evans agreed that to the extent Mr. Evans's responses to interrogatories required an identical response from one defendant, Mr. Evans could refer to that earlier response.  *Id.*  On September 15, 2010, Mr. Simon received Mr. Evans's responses to discovery.  *Id.*

As to Mr. Evans's response to request for production of documents Nos. 1, 2, 4, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20, Mr. Simon gave Mr. Evans an additional thirty days to respond, but that deadline passed with no response (#184-2, Ex. F).  Three days before the October 28, 2010, discovery cutoff deadline, Mr. Simon sent a meet-and-confer letter to Mr. Boles and told him that more than forty days had passed without any response at all.  *Id.*  In response to the remaining document requests, Mr. Evans interposed the attorney-client privilege and a general claim of confidentiality.  *Id.* Mr. Simon correctly pointed out in his letter that since the plaintiffs' claims concern interception of privileged communications, they had put the subject matter at issue; therefore, the privilege was waived.  *Id.*

---

[1]Cal Potter, Esq. now represents Mr. Witherow (#195).

2

Mr. Simon further noted that Mr. Evans had simply failed to answer any of the interrogatories Messrs. Skolnik and Henley propounded. *Id.* Finally, the answers to Mr. Helling's interrogatories were unresponsive, incomplete, and cited to prior answers that had nothing to do with the interrogatory posed. *Id.* In light of the October 28, 2010, discovery deadline, Mr. Simon asked for a response by November 3, 2010. *Id.* Mr. Simon followed his letter with a telephone call to Mr. Boles on November 3, 2010, but was told that Mr. Boles was out of the office for the balance of the week. *Id.* Mr. Simon left a message asking Mr. Boles to return his call, but never heard from him. *Id.* According to Mr. Simon, Mr. Boles's lack of communication was a regular pattern as Mr. Boles failed to respond to three prior letters, and five phone messages over the weeks leading up to the close of discovery. *Id.* Messrs. Boles and Simon last spoke at Mr. Evans's October 27, 2010, deposition. *Id.* On November 5, 2010, Mr. Simon filed his motion to compel and for sanctions (#184), and the motion was set for hearing on December 1, 2010 (#188).

Mr. Boles filed no response to the motion to compel, but appeared telephonically for the hearing. Mr. Boles told the court that he had not received the motion to compel, that Mr. Simon never contacted him for a meet-and-confer, and that he had no clue about the nature of the discovery dispute. However, the court noted that the certificate of service of the motion evidenced it was mailed to Mr. Boles's law office, and the motion was also docketed on PACER. Moreover, Mr. Simon's declaration and exhibits in support of the motion detailed his efforts to meet and confer with Mr. Boles without success. The court granted the motion to compel and for sanctions and directed that documents responsive to Request Nos. 1, 2, 4, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20 be produced by the close of business on December 8, 2010, and noted that any objections to their production were deemed waived (#188). The court ordered the same deadline to answer the interrogatories propounded by Messrs. Skolnik and Henley, which Mr. Evans had never answered. *Id.* Mr. Evans was also ordered to clarify his answer to Mr. Helling's Interrogatory No. 5 and to respond fully to Mr. Helling's Interrogatories 16, 18, 19, 20, and 21. *Id.* If Mr. Evans failed to comply with the court's order, defendants had leave to file a motion for further sanctions. *Id.* Due to Mr. Evans's failure to comply with discovery, the court was constrained to grant another extension of the deadline to file dispositive motions. *Id.* On January 4,

1   2011, this court granted Mr. Evans's motion substituting himself *in pro se* in place of Mr. Boles (# 193).[2]

2         Following the December 1, 2010 hearing, Mr. Simon had no further communications with Mr.

3   Boles.  Instead, Mr. Evans wrote directly to Mr. Simon on December 8, 2010, presumably because both

4   he and Mr. Boles consented to direct communications with Mr. Simon, as had been the practice in

5   August 2010.  Mr. Evans advised that he had understood that pursuant to their agreement in August, Mr.

6   Evans was only required to respond to one set of defendants' interrogatories and the request for

7   production of documents (#190-1, Ex. C).  Mr. Evans also sought guidance from Mr. Simon about what

8   the court ordered Mr. Evans to do at the December 1, 2010 hearing.  *Id.*  On that same day, Mr. Simon

9   responded by forwarding copies of his motion to compel, and he clarified that the agreement concerning

10  duplicate interrogatories was not intended to excuse Mr. Evans from responding at all (#190-1, Ex. D).

11  Mr. Simon declined to offer Mr. Evans legal advice concerning the court's order and reminded Mr.

12  Evans that discovery responses were due that day.  *Id.*  Mr. Evans responded that he would have his

13  discovery responses completed by December 9, 2010, one day late (#190-1, Ex. E).

14        On December 9, 2010, Mr. Evans provided his responses to the outstanding discovery (#190-1,

15  Ex. F).  Mr. Evans supplemented his answers to Mr. Helling's interrogatories, and responded to all

16  seventeen outstanding requests for production, stating that he has no records whatsoever from May 2007

17  through August 2008, the period during which he represented Mr. Witherow and during which time the

18  defendants allegedly intercepted attorney-client communications.  *Id.*  In response to Messrs. Sklonik

19  and Henley's outstanding interrogatories, Mr. Evans responded as follows:

20          Note: Pursuant to discussions with counsel, Plaintiff Evans offers that
            the responses to the Interrogatories from Skolnik and Henley will be the

21          same as the responses to the Interrogatories to Donat[3] and Helling and
            therefore Plaintiff Evans offers those Answers to Interrogatories as the

22          same answers to the same Interrogatories from Defendants Skolnik and
            Henley.

23

24  _____

25       [2]For the period  August 2010 until January 4, 2011, when Mr. Evans substituted himself in *pro*
    se, Mr. Evans apparently consented, with Mr. Boles's approval, to have direct communications with Mr.

26  Simon.  This occurred sporadically, but the record is clear that after the December 1, 2010 hearing, Mr.
    Evans communicated directly with Mr. Simon.

27       [3]The court has not reviewed Mr. Evans's answers to Mr. Donat's interrogatories.

28                              4

1

2

3

> Additionally, Plaintiff Evans has filed supplemental requests to the Interrogatories previously propounded and responded to from Defendant Helling, and those supplemental responses also as the same as they would be for the original Interrogatories from Defendant [sic] Henley and Skolnik.

4  *Id.,* Ex. F, pages 50-51.[4]

5  Upon receipt of these discovery responses, Mr. Simon sent a meet-and-confer letter on December

6  10, 2010, to Messrs. Boles and Evans and pointed out the deficiencies with the responses (#190-1, Ex.

7  G).  Neither Mr. Boles nor Mr. Evans responded, and Mr. Simons filed this motion (#190-1, Ex. A).

8  This case has been pending since June 25, 2008 (#1).

9  **II.    Discussion and Analysis**

10  Fed.R.Civ.P. 37(b) provides that failure to obey an order to provide discovery is sanctionable

11  conduct, and the range of relevant sanctions are:

12

13

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

14

15

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

16

> (iii) striking pleadings in whole or in part;

17

> (iv) staying further proceedings until the order is obeyed;

18

> (v) dismissing the action or proceeding in whole or in part;

19

> (vi) rendering a default judgment against the disobedient party;

20  Here, defendants ask for the case-terminating sanction of dismissal of Mr. Evans's complaint for

21  his failure to obey the December 1, 2010 order.  Because a terminating sanction is very severe, only

22  "willfulness, bad faith, and fault" justify such sanctions. *Jorgensen v. Cassiday,* 320 F.3d 906, 912 (9th

23  Cir. 2003).  The Ninth Circuit has developed a five-part test, with three subparts to the fifth part, to

24  decide whether a case-dispositive sanction under Rule 37(b)(2) is just: "(1) the public's interest in

25  expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice

26

27  [4]It appears that Mr. Evans signed the discovery responses for his then attorney, Mr. Boles. *See* #190-1, Ex. F., pages 42, 47, and 51.

28

to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Connecticut General Life Ins. Co. v. New Images of Beverly Hills,* 482 F.3d 1091, 1096 (9th Cir. 2007). "The subparts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." *Id.* This is not a mechanical test, but is intended to provide the court with a framework to think about what it should do. *Id.*

Before analyzing whether a case-dispositive sanction is warranted in this case, the court must consider what exactly Mr. Evans did or did not do in response to the December 1, 2010 order. Mr. Evans supplemented his discovery one day late, on December 9, 2010, and he blames his tardiness on his attorney for failing to communicate anything to him about the status of the case and on the Clerk's Office because the order was not docketed until December 8, 2010 (#192, page 3, lines 6-28). Communication with one's attorney is a two-way street, and it is evident that Messrs. Evans and Boles both consistently abdicated their responsibilities in this action. As for the delay in docketing the December 1, 2010 order, had Mr. Evans made a cursory review of the docket sheet, he would have learned that defendants filed a motion to compel and perhaps he would have read what it said. He would have also learned that a hearing had been set on December 1, 2010, and that Mr. Boles had failed to respond to the motion. In addition, Mr. Evans could have asked for a one-day extension of the court's December 1, 2010 order, but he did not. Mr. Evans's excuses are without merit, and he disobeyed the court's order.

Now to the discovery responses. The court ordered Mr. Evans to respond to outstanding requests for production of documents and deemed any objections waived (#188). Since Mr. Evans had earlier interposed attorney-client privilege and confidentiality concerns to the requested documents, logic dictates that he had, in fact, reviewed documents in his possession and determined such objections were well taken, as opposed to frivolous or untrue. Understandably, it came as a surprise to Mr. Simon on December 9, 2010, when Mr. Evans responded to every single document production request with the news that he had not one piece of paper responsive to any of the requests. Nevertheless, Mr. Evans responded to the court's order, and he will live with the consequences of having no written or

1   documentary evidence of an attorney-client relationship with Mr. Witherow from May 2007 through

2   August 2008 – a span of fifteen months.

3        On December 1, 2010, the court also ordered Mr. Evans to confirm whether his answer to Mr.

4   Helling's Interrogatory No. 5 was complete, and to respond more fully to Mr. Helling's Interrogatory

5   Nos. 16, 18, 19, 20, and 21. *Id.* He did so, albeit one day late.

6        The heart of defendants' motion for case-terminating sanctions concerns Mr. Evans's answers

7   to Messrs. Sklonik and Henley's interrogatories. Mr. Henley asked twenty-three interrogatories, and Mr.

8   Sklonik asked fifteen (#184, Ex. C & D). Both Mr. Simon and Mr. Evans agree that in August 2010,

9   the two discussed the interrogatories and agreed that to the extent an answer to one interrogatory posed

10  by one defendant was identical to the answer to another defendant, Mr. Evans could refer to the first

11  answered interrogatory. This is reasonable and saves time and paper. However, this is not remotely

12  what Mr. Evans did. Mr. Evans actually only answered interrogatories posed to Mr. Helling, and these

13  answers were, in part, the basis of defendants' motion to compel because his answers were incomplete

14  and referred to other answers that did not address information sought by a specific interrogatory.[5] The

15

16      [5]For example, Mr. Helling's Interrogatory No. 5 and Mr. Evans's response is as follows:

17        INTERROGATORY NO. 5

18            Identify with specificity each and every fact supporting your
    allegation that Defendants "required authorization for interception and
19  eavesdropping on Plaintiffs' confidential attorney/client
    telecommunications" as alleged in your First Amended Complaint.
20  (Docket #33, p. 7, ¶ 34).

21        ANSWER TO INTERROGATORY NO. 5
              The Nevada Revised Statutes require that Defendants obtain
22  Court order prior to Intercepting Plaintiff Evans' phone calls, especially
    those phone calls between Plaintiff Evans and his clients. *****ADD
23  MORE*****

24  Mr. Helling's Interrogatory No. 16 and Mr. Evans's response was:

25        INTERROGATORY NO. 16
              Identify with specificity each and every fact supporting your
26  allegation that Defendants' "acted with deliberate indifference or reckless
    disregard for Plaintiffs clearly established statutory and constitutional
27  rights" as alleged in your First Amended Complaint. (Docket #33, p. 9,
    ¶ 41).

28

1  court ordered Mr. Evans to supplement and/or clarify certain of his answers to Mr. Helling's

2  interrogatories on December 1, 2010, and he belatedly did so.

3      As for his answers to Messrs. Skolnik and Henley's interrogatories, Mr. Evans abandoned any

4  pretense of the customary protocol for answering interrogatories in favor of a slapdash – and utterly

5  unhelpful – approach.  Mr. Evans did not bother to state the individual interrogatories posed by Messrs.

6  Skolnik and Henley, nor did he go to the trouble to provide specific answers or, for example, refer Mr.

7  Simon to an answer to be found in his answers to Mr. Helling's interrogatories.  He simply answered

8  all thirty-eight interrogatories with one expansive two-sentence statement he characterized as a "note,"

9  which the court has already quoted *verbatim* in the procedural history of this order.  Translated, Mr.

10  Evans appears to be saying, "Whatever I said in my answer to Mr. Helling's interrogatories – regardless

11  of whether they are same questions, different questions, or whatever – my answers are all the same for

12  everyone."  As the court discusses in detail below, the defendants' three sets of interrogatories were not

13  identical at all; in fact, each defendant asked discrete questions on very different topics related to this

14  case.

15      Of course, Mr. Evans's answers to Messrs. Skolnik and Henley's interrogatories are not only

16  improper, they are useless.  In opposition to the motion for terminating sanctions, Mr. Evans does not

17  trouble himself with an analysis of Ninth Circuit cases that address the very issue of dispositive

18  sanctions; instead, he blames Mr. Simon, Mr. Boles, and the Clerk's Office. Mr. Evans blames Mr.

19  Simon because, according to Mr. Evans, they agreed that this response to discovery was perfectly

20  acceptable.  Having reviewed the papers in this case, the court does not find this excuse plausible.  No

21  competent lawyer would find Mr. Evans's two-sentence "note" to be an acceptable response to answers

22  to interrogatories.  Next, Mr. Evans contends that Mr. Simon waived the defendants' right to any

23  discovery responses  because Mr. Simon did not ask about the discovery during Mr. Evans's deposition

24  last fall.  Not surprisingly, Mr. Evans cites no citation to any legal authority for the proposition that if

25

26  _____

27  ANSWER TO INTERROGATORY NO. 16
      See Answer to Interrogatory Nos. 6, 8, 9, 10, 11, 12, and 13.

28                                    8

1  a lawyer takes a party's deposition, the right to insist on responses to written discovery is waived. That

2  is because none exists.

3  Next, Mr. Evans's blames his former attorney, Mr. Boles. Mr. Evans complains that Mr. Boles,

4  never called, never wrote, never communicated with him. In fact, Mr. Evans had no inkling that

5  defendants had filed a motion to compel, that it was set for hearing, and that his attorney failed to oppose

6  it. The court has three comments. First, Mr. Evans hired Mr. Boles and, being an attorney himself, is

7  well aware of Mr. Boles's legal skills. Second, Mr. Evans practices in federal court himself, and is well

8  versed in PACER; therefore, he has unfettered access to the docket sheet in his own case. Third, Mr.

9  Boles's failure to adequately represent Mr. Evans's interest in this case is no excuse. Mr. Boles's

10  conduct does not immunize Mr. Evans from the consequences of his lawyer's  inaction or misconduct.

11  *Link v. Wabash R.Co.,* 370 U.S. 626 (1962); *Malone v. U.S. Postal Service,* 833 F.2d 128, 134 (9th Cir.

12  1987); *In re Hill,* 775 F.2d 1385 (9th Cir. 1985).

13  Finally, Mr. Evans blames the Clerk of Court for not posting the December 1, 2010, order on its

14  electronic filing system*,* PACER, until December 8, 2010. Had Mr. Evans been interested in the status

15  of his case, he could have checked PACER, which would have revealed the motion, the hearing, and the

16  fact that his attorney filed no opposition to the motion to compel.  Apparently, Mr. Boles did not

17  consider the sanction order a "big order," even when Mr. Evans called to ask him about it, *See* #192,

18  page 3, lines 18-28.  The disconnect was between Mr. Boles and Mr. Evans, and no one else.

19  The court finds that Mr. Evans violated its December 1, 2010 order by failing to provide the

20  delinquent discovery by the deadline of December 8, 2010. The court also finds that Mr. Evans violated

21  the court's order by failing to adequately answer Messrs. Sklonik and Henley's interrogatories.  To

22  decide whether dispositive sanctions are warranted, the court relies on the Ninth Circuit's five-part test.

23  *Connecticut General,* 482 F.3d 1091 at 1096. This court is mindful that  "Rule 37(b)(2) contains two

24  standards – one general and one specific – that limits a district court's discretion.  First, any sanction

25  must be 'just;' second, the sanction must be specifically related to the particular 'claim' which was at

26  issue in the order to provide discovery." *Ins. Corp of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,*

27  456 U.S. 694, 707 (1982); *see also, Navellier v. Sletten,* 262 F.3d 923, 947 (9th Cir. 2001).

28

9

### 1.    The public's interest in expeditious resolution of litigation

This case has been pending since June 25, 2008, two years and eight months.  Pursuant to the Civil Justice Reform Act, this case will be reported as a three-year case on September 30, 2011, unless it is concluded through dispositive motion or trial.  This factor weighs in defendants' favor.

### 2.    The court's need to manage its docket

The court held its first case management conference in this case on November 18, 2008,  and suspended a scheduling order until all parties were added (#27).  On January 7, 2009, the court ordered the parties to file a discovery plan and scheduling order on February 17, 2009 (#41).   On February 20, 2009, the court approved the discovery plan and scheduling order, but cautioned that, given the delays in this case, no extensions of discovery would be granted (#55).  Discovery was to be completed by October 23, 2009. *Id.*  In the interim, suffice it to say that there were numerous dispositive and non-dispositive motions, parties added and then dismissed, substitutions of counsel (Mr. Evans did so three times), requests by one party or another to stay discovery, and numerous amendments to complaints. When the dust finally settled in June 2010, the court issued what it hoped would be a final discovery plan and scheduling order (#164).  That hope was in vain.  The court issued one final – truly final – scheduling order that discovery would end October 28, 2010, and dispositive motions were due December 28, 2010 (#175).   Defendants filed their motion to compel concerning Mr. Evans's outstanding discovery, which resulted in additional delays.  Dispositive motions are now due March 22, 2011, only six months before this case is reportable as a three-year case (#199).  This factor weighs in defendants' favor.

### 3.    The risk of prejudice to the party seeking sanctions

Messrs. Skolnik and Henley are entitled to conduct written discovery, and they are entitled to actual answers to interrogatories.  Neither they, nor their attorney, are required to review Mr. Helling's answers, discern which of these might also correspond with Mr. Evans's "note" that whatever he said to one defendant is what he would say to another defendant.  This is especially true when the questions posed by one defendant are not the same questions posed by another.  This is why Fed.R.Civ.P. 33

10

1   outlines exactly how to answer interrogatories.  Mr. Evans did not remotely do this.  His conduct has

2   greatly prejudiced Messrs. Skolnik and Henley.   This factor weighs in favor of defendants.

3             ***4.        The public policy favoring disposition of cases on their merits***

4             The court harbors faint hope that this case may someday end and heartily believes public policy

5   would be advanced if this case is decided.  At this point, the court's interest in whether it is decided on

6   the merits or otherwise is waning, but acknowledges that it is better for cases to be decided on the merits.

7   This factor weighs in Mr. Evans's favor.

8             ***5.        The availability of less drastic sanctions***

9             As to the fifth factor, the court must consider three sub-parts: (1) whether the court has

10   considered lesser sanctions; (2) whether it tried them; and (3) whether it warned the recalcitrant party

11   of the potential for case-ending sanctions.  *Connecticut General,* 482 F.3d 1091, 1096.  The court has

12   considered lesser sanctions and believes that Rule 37(b)(2) offers alternatives to the case-ending

13   sanctions Mr. Simon requests. The second factor looks to prior sanctions.  The court ordered Mr. Evans

14   to answer the discovery and awarded defendants' their attorney's fees for bringing the motion to compel.

15   Although it did not get Mr. Boles's attention, it did get Mr. Evans's, but not entirely.  He provided

16   supplemental answers to Mr. Helling's interrogatories, and made the startling disclosure that although

17   he must have once believed he had documents responsive to requests for production, he either no longer

18   has them or never did.  As for interrogatory answers for Messrs. Sklonik and Henley, the sanctions

19   proved no motivation to answer meaningfully at all.  The third factor concerns whether the court warned

20   Mr. Evans, through Mr. Boles, that case-terminating sanctions were a possibility if he failed to do what

21   the court ordered on December 1, 2010.  Although the court told Mr. Boles that more sanctions would

22   be forthcoming if Mr. Evans failed to obey the court's order, the court did not use the term "case-

23   dispositive sanctions" at the hearing.

24             Having reviewed the three subparts of the fifth factor, the court concludes that Mr. Evans

25   disobeyed this court's order because he did not meet the December 8, 2010 deadline.  This alone does

26   not warrant case-ending sanctions, and even defendants would no doubt agree.  Then there is the matter

27   Mr. Evans's incomplete and useless answers to Messrs. Skolnik and Henley's interrogatories.  The court

28

finds it too extreme to sanction Mr. Evans with dismissal of his case, and there are less drastic sanctions available.

The court now turns to Messrs. Helling, Sklonik, and Henley's interrogatories and discusses them in detail.

### A.    Mr. Helling's Interrogatories

Mr. Helling's interrogatories focused on facts supporting the legal bases for Mr. Evans's claims (#184-2, Ex. E), and they fall into these categories:

(1)    identification of  federal and state statutes prohibiting the conduct alleged (Helling Int. Nos. 1, 9 & 17);

(2)    policies and procedures Mr. Sklonik implemented to eavesdrop on protected attorney-client communications (Helling Int. No. 2);

(3)    identification of each due process violation and facts that support that claim (Helling Int. Nos. 11 & 12);

(4)    identification of facts supporting Mr. Evans's allegation that defendants used "information gleaned" from attorney-client communications and what that information was (Helling Int. Nos. 3 & 4);

(5)    identification of facts to support Mr. Evans's allegation that defendants "required authorization for interception and eavesdropping on Plaintiffs' confidential attorney/client telecommunications" (Helling Int. No. 5);

(6)    identification of facts supporting Mr. Evans's allegation that defendants acted intentionally, recklessly or with deliberate indifference of state and federal laws and Mr. Evans's statutory and constitutional rights (Helling Int. No. 6);

(7)    identification of facts supporting Mr. Evans's claim that defendants' actions were not tailored to advance legitimate or reasonable penological goals (Helling Int. No. 7);

(8)    identification of every constitutional right allegedly violated and every liberty or property interest allegedly Mr. Evans was deprived of (Helling Int. Nos. 8, 13 &17);

(9)    identification of facts supporting the allegation that defendants require a judicially approved search warrant to monitor outgoing phone calls (Helling Int. No. 10);

(10)    identification of all harm and injuries Mr. Evans suffered and/or continues to suffer as a result of defendants' conduct as alleged in the complaint (Helling Int. Nos. 14 & 15);

1     (11)    identification of facts supporting Mr. Evans's allegations that defendants acted
2              with deliberate indifference or reckless disregard for Mr. Evans's statutory and
                constitutional rights (Helling Int. No. 16); and

3     (12)    identification of past or present emotional and physical injuries Mr. Evans
4              suffered as a result of defendants' alleged conduct (Helling Int. Nos. 18, 19, 20,
                & 21)

5   Mr. Evans may proceed to admit evidence related to these legal and factual issues, and proceed with

6  his claims to the extent they relate factually and legally to his answers to Mr. Helling's interrogatories.

7                     **B.**    **Mr. Skolnik's Interrogatories**

8        Mr. Skolnik's interrogatories do not duplicate Mr. Helling's; instead, they focus on the allegedly

9  intercepted phone calls. (#184-1, Ex. C).  Skolnik Interrogatory No. 1 is the pivotal interrogatory from

10  which the succeeding interrogatories flow: "Identify by date, time, and length each and every phone call

11  between you and Plaintiff John Witherow that you allege Defendants intercepted between May 1, 2007

12  and August 31, 2008 as alleged in your First Amended Complaint...." *Id.*  The remaining interrogatories

13  can be categorized as follows:

14     (1)    Provide details about the phone calls, such as the persons on the phone calls, the
15              time spent on personal matters, and the topics of personal conversations (Skolnik
                Int. Nos. 2, 3, & 4);

16     (2)    Identify all attorney-client communications exchanged during the phone calls, the
                names of all lawsuits that were pending between the dates in question, as well as
17              the case name and number of those lawsuits, the allegedly intercepted
                information that was used to the plaintiffs' detriments in any lawsuit, and the
18              outcome of each matter (Skolnik Int. Nos. 5, 6, 7, 8 & 15);

19     (3)    Explain why Mr. Evans believes defendants intercepted alleged attorney-client
20              phone calls and which defendants intercepted the phone calls (Skolnik Int. Nos.
                9 & 10);

21     (4)    Explain whether Mr. Evans each call Messrs. Witherow and Evans had during the
22              period in question began with a pre-recorded message that all phone calls are
                monitored or recorded and whether Mr. Evans head this message (Skolnik Int.
23              Nos. 11 & 12); and

24     (5)    State all facts on which Mr. Evans bases his claim that phone calls during the
                stated time period were or were not being monitored (Skolnik Int. Nos. 13 & 14).

25        The Skolnik interrogatories are not duplicative of Mr. Helling's, and Mr. Evans did not answer

26  them when they became due, after Mr. Simon filed his motion to compel, or after the court ordered Mr.

27  Evans to do so.  Pursuant to Rule 37(b)(2)(i) and (ii), Mr. Evans is prohibited from introducing the

28                           13

subject matter of these interrogatories into evidence to support his claims or oppose defendants, and the

court deems established those facts that Mr. Skolnik sought to establish by these interrogatories.

### C.    Mr. Henley's Interrogatories

Just as Mr. Skolnik's interrogatories did not duplicate Mr. Helling's, the same is true for Mr.

Henley's, although there appears to be some overlap between Messrs. Henley and Skolnik (#184-1, Ex.

D). Mr. Henley's interrogatories can be summarized as follows:

(1)    Identification of every person who may have personal knowledge of facts alleged in Mr. Evans's complaint (Henley Int. No 1);

(2)    Identify every act and/or omission by Mr. Henley that supports Mr. Evans's claims and every fact supporting the claim that Mr. Henley intercepted the phone calls in question (Henley Int. Nos. 2 & 7);

(3)    Identify every and/or omission by Mr. Skolnik that supports Mr. Evans's claims and every fact supporting the claim that Mr. Skolnik intercepted the phone calls in question (Henley Int. Nos 3 & 8);

(4)    Identify every act and/or omission by Mr. Helling that supports Mr. Evans's claims and every fact supporting the claim that Mr. Helling intercepted the phone calls in question (Henley Int. Nos. 4 & 9);

(5)    Identify every act and/or omission by William Donat that supports Mr. Evans's claims and every fact supporting the claim that Mr. Donat intercepted the phone calls in question (Henley Int. Nos. 5 & 10);

(6)    Identify every act and/or omission by Lea Baker that supports Mr. Evans's claims and every fact supporting the claim that Ms./Mr. Baker intercepted the phone calls in question (Henley Int. Nos. 6 & 11);

(7)    Identify cases in which Mr. Evans represented Mr. Witherow during the period in question, how and when Mr. Evans first learned of the alleged intercepted phone calls, evidence to support the claim that attorney-client communications were intercepted and recorded, and evidence that defendants were monitoring these communications (Henley Int. Nos. 12, 13, 14, & 15);

(8)    Identify when Mr. Evans employed Mr. Witherow as a paralegal or legal researcher, the names of individuals, organization, or companies whom Mr. Witherow referred to Mr. Evans as potential clients, and the names and case numbers for lawsuits that Mr. Evans filed on behalf of such clients from 1999 to the present (Henley Int. Nos. 16, 17, 18, & 19);

(9)    Identify how Mr. Evans recorded his billable time in representation of Mr. Witherow during the period in question (Henley Int. No. 20); and

(10)   Identify monetary gifts, payments or transfers from Mr. Evans to Mr. Witherow's inmate account or any other account for Mr. Witherow's benefit, and whether

14

such payments compensated Mr. Witherow for legal work and/or for referring clients to Mr. Evans (Henley Int. Nos. 21, 22, & 23).

As with Mr. Skolnik's interrogatories, Mr. Henley's cover different topics that those posed by Mr Helling.  Mr. Evans never answered these interrogatories either; therefore, pursuant to Rule 37(b)(2)(i) and (ii), Mr. Evans is prohibited from introducing the subject matter of Mr. Henley's interrogatories to support his claims or to oppose defendants, and the court deems established those facts that Mr. Henley sought to establish by these interrogatories.

Notwithstanding this order, the deadline for the filing of dispositive motions shall not be extended.  As noted in the court's January 26, 2011 order, dispositive motions shall be filed no later than March 22, 2011.

### III.   Conclusion

Based on the foregoing, and for good cause appearing, defendants' motion for terminating sanctions (#190) is **DENIED**.  However, Fed.R.Civ.P. 37(b)(2) affords the court the ability to fashion sanctions that are just and that specifically relate to the claims at issue at the December 1, 2010 hearing as set forth in the order that followed (#188).

**THEREFORE, IT IS ORDERED** as follows:

1.      Pursuant to Fed.R.Civ.P. 37(b)(2)(i) and (ii), Mr. Evans is prohibited from introducing the subject matter of Mr. Henley's interrogatories to support his claims or to oppose defendants, and the court deems established those facts that Mr. Henley sought to establish by these interrogatories; and

2.      Pursuant to Rule 37(b)(2)(i) and (ii), Mr. Evans is prohibited from introducing the subject matter of the Skolnik interrogatories into evidence to support his claims or oppose defendants, and the court deems established those facts that Mr. Skolnik sought to establish by these interrogatories.

IT IS SO ORDERED.

DATED:   February 3, 2011.

_____
UNITED STATES MAGISTRATE JUDGE