1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

4

5

6

7

8

9

DONALD YORK EVANS &
JOHN WITHEROW

        Plaintiffs,

    v.

INMATE CALLING SOLUTIONS,
*et al.*,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

3:08-cv-00353-GMN-VPC

**REPORT AND RECOMMENDATION**
**OF U.S. MAGISTRATE JUDGE**

July 29, 2011

10

11

12

13

14

15

16

17

18

19

20

       This Report and Recommendation is made to the Honorable Gloria M. Navarro, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  There are several motions before the court.  Plaintiff Witherow filed a motion for leave to substitute specific names of Doe defendants (#204)[1], defendants opposed (#208), and plaintiff Witherow replied (#217).  Plaintiff Witherow also filed a motion for partial summary judgment (#205), defendants opposed (#212), and plaintiff Witherow replied (#218).  Defendants filed a motion for summary judgment on Witherow's second amended complaint (#207), plaintiff Witherow opposed (#216), and defendants replied (#220).  Finally, defendants filed a motion for summary judgment on Evans's first amended complaint (#206), plaintiff Evans opposed (#215), and defendants replied (#219).  The following Report and Recommendation is based upon the court's thorough review of the record and motions.

21

22

**I.  HISTORY & PROCEDURAL BACKGROUND**

23

24

25

26

       Plaintiffs Donald York Evans and John Witherow filed the instant lawsuit on July 26, 2008 (#2).  Plaintiff Evans is a licensed attorney in Nevada and plaintiff Witherow is an inmate incarcerated in Nevada State Prison ("NSP") during the events giving rise to his complaint.  *Id.* at 3.  In their original complaint, plaintiffs claim that defendants Inmate Calling Solutions ("ICS"),

27

28

     [1]    Refers to the court's docket numbers.

1   Skolnik, Helling, Donat, Henley, Baker, John and Jane Does I-XXV, and Black & White

2   Corporations I-X intercepted and eavesdropped on several telephone calls, during which plaintiffs

3   exchanged confidential attorney-client information, while plaintiff Witherow was incarcerated at

4   Nevada State Prison ("NSP"). *Id.* at 3-5. Plaintiffs believe defendants' conduct violates their rights

5   to confidential attorney-client telecommunications without a valid search warrant, right to privacy,

6   right to be free from unreasonable search and seizure, and right to due process of law pursuant to the

7   Omnibus Crime Control and Safe Streets Act of 1968 ("the Act"), 18 U.S.C. § 2511, and the Fourth

8   and Fourteenth Amendments of the U.S. Constitution. *Id.* at 6. Plaintiffs seek declaratory and

9   injunctive relief, and compensatory and punitive damages. *Id.* at 5-7.

10          The central dispute in this matter arises from the phone monitoring practices implemented

11   in Unit 13 at NSP. *Id.* at 4-5. For all relevant periods, NDOC housed plaintiff Witherow in

12   administrative segregation, Unit 13, at NSP (#205, p. 5). Parties agree that plaintiff Witherow

13   requested placement in administrative segregation because he feared for his safety (#207, p. 4 &

14   #216, p. 5). Inmates housed in Unit 13 are not permitted to move around the unit, necessitating the

15   use of a portable phone to place personal and legal calls. *Id.* Inmates in Unit 13 know that NDOC

16   monitors outgoing personal phone calls. *Id.* Additionally, the number of personal calls

17   administratively segregated inmates are permitted to place is limited (#207, p. 6). Defendants

18   explain that monitoring and recording personal calls is necessary to prevent the commission of

19   crimes and is handled by a third-party provider located off-site. *Id.* at 7. Defendants note the

20   distinction between monitoring of personal and legal calls, stating that inmates may designate legal

21   numbers, which the third-party provider enters into its system to prevent recording. *Id.* However,

22   in addition to the third-party monitoring system, officers working in Unit 13 monitored calls using

23   speaker boxes installed in the control booth. *Id.* at 8. To prevent inmate abuses of the phone system,

24   such as placing unauthorized personal calls and making excessive personal calls, officers screened

25   calls to "verify that they were properly placed legal calls." *Id.* "This initial screening was not

26   supposed to last longer than a few seconds and was terminated as soon as there was any indication

27   that the inmate was speaking with an attorney or law office." *Id.* Plaintiff claims that between May

28   8, 2007 and July 30, 2008, officers illegally monitored 111 legal calls (#207, p. 4 & #216, p. 5).

In December 2008, plaintiffs filed a first amended compliant ("FAC"), adding Global Tel, Inc. ("GTI") and Embarq as parties (#33). However, in May 2009, plaintiff Witherow moved the court to proceed independently, as a *pro se* litigant (#60). He then filed a second amended complaint ("SAC") (#80), which includes one hundred-sixteen causes of action (#80). As in the FAC, plaintiff Witherow alleges that prison officials intercepted and monitored attorney-client phone calls, but in the SAC he identifies each intercepted call as a separate cause of action and names NSP officer Connally as a defendant. *Id.* He also names ICS, GTI, and Embarq as defendants because the companies "were contracted by the NDOC during the relevant time period to maintain and operate" the telephone system. *Id.* p. 7. The FAC is the operative pleading for plaintiff Evans's claims in this matter (#33), and he represents himself *pro se* (#193). The SAC is now the operative pleading for plaintiff Witherow's claims in this lawsuit (#80), and he is represented by attorney Cal Potter (#195). On November 5, 2009, the court dismissed defendants ICS, GTI, and Embarq from both the FAC and the SAC (#122). The following motions are now pending before the court.

**A.**    **Plaintiff Witherow's Motion for Leave to Substitute Specific Names of Doe Defendants**

Plaintiff Witherow requests leave from the court to substitute defendants Henley, Donat, Helling, and Skolnik in the place of the Doe defendants presently listed in the 36th, 44th, 48th, 49th, 57th, 74th, 75th, 81st, 82nd, 89th, 91st, 92nd, and 114th causes of action in the SAC (#204, p. 1). Plaintiff "believes the facts and evidence produced by Defendants warrants the substitution of these Defendants in those causes of action to protect the interest of fairness and justice in this action." *Id.* at 3. Defendants argue that plaintiff Witherow's request is untimely and procedurally flawed, as he does not attach an amended complaint to his motion, his motion would modify previous written discovery responses, and the motion seeks to substitute named defendants in the place of Doe defendants (#208, pp. 2-5). Additionally, defendants believe the delay in filing the motion would prejudice them. *Id.* at 5. Plaintiff replies that because plaintiff Witherow acted in *pro se* when he filed the SAC, the court is obliged to construe his pleading liberally, thus permitting the requested amendment (#217, p. 4).

**B.**    **Plaintiff Witherow's Motion for Partial Summary Judgment**

Plaintiff Witherow seeks summary judgment on the 36th, 44th, 48th, 49th, 57th, 74th, 75th,

81st, 82nd, 89th, 91st, 92nd, 114th, 115th, and 116th causes of action in the SAC (#205, p. 2). Plaintiff Witherow alleges that defendant Baker intercepted and eavesdropped on his confidential attorney-client calls with plaintiff Evans on four separate dates, comprising the 36th, 44th, 48th, and 49th causes of action. *Id.* at 5-6. Defendant Baker also intercepted and eavesdropped on plaintiff Witherow's calls to attorney Hager on one occasion, as set forth in the 57th cause of action. *Id.* at 6. Likewise, defendant Connally intercepted and eavesdropped on plaintiff Witherow's confidential attorney-client calls with plaintiff Evans on seven different days, as outlined in the 74th, 75th, 81st, 82nd, 89th, 91st, and 92nd causes of action. *Id.* Plaintiff Connally also intercepted and eavesdropped on plaintiff Witherow's calls with attorney Hager on one occasion, as detailed in the 114th cause of action. *Id.* In the 115th cause of action, plaintiff accuses defendant Skolnik of failing to adopt regulations to properly train employees on confidential legal calls and to adopt procedures for such calls. *Id.* at 8. In the 116th cause of action, plaintiff claims that defendants Henley, Donat, and Helling improperly responded to his grievances. *Id.* at 7. Plaintiff believes these documented actions violate his statutory rights under the Omnibus Crime Control and Safe Streets Act, and his Fourth and Fourteenth Amendment rights. *Id.* at 11-14.

Defendants oppose plaintiff's motion by noting that plaintiff Witherow fails to offer evidence that he actually shared privileged information during these calls, that any harm resulted from the alleged interception of the calls, or that the monitoring went on long enough for prison officials to hear any privileged information (#212, p. 3). Further, defendants argue that plaintiff Witherow's calls were not monitored beyond an initial screen, which was intended to prevent misuse of the prison phone system by inmates housed in administrative segregation, a practice which defendants argue does not violate any statutory or constitutional rights. *Id.* at 8, 12. Defendants believe that the Omnibus Crime Control and Safe Street Act does not apply in this case, as the exception allowing law enforcement officers to use devices in the ordinary course of business applies. *Id.* at 14. Defendants also state that plaintiff Witherow's Fourth Amendment rights were not violated as he did not have a reasonable expectation of privacy in improperly placed legal calls. *Id.* at 15. Furthermore, his Fourteenth Amendment rights were not violated as plaintiff Witherow cannot show that any of his property or liberty interests were denied because he fails to demonstrate violation of

1    the attorney-client privilege.  *Id.* at 16.  Defendants also claim that plaintiff Witherow failed to

2    exhaust his administrative remedies for fourteen of the fifteen counts for which he seeks summary

3    judgment, and also failed to exhaust his remedies with respect to any counts involving defendant

4    Connally.  *Id.* at 16-18.  Finally, defendants argue that plaintiff Witherow's claim against defendants

5    Donat, Henley, and Helling for failure to properly respond to his grievance should fail as a matter

6    or law, as should his supervisory liability claim against defendant Skolnik.  *Id.* at 18.

7        In his reply, plaintiff Witherow claims it is unnecessary for him to prove that defendants

8    gleaned any confidential information from the calls they monitored or that they used the information

9    to harm him (#218, p. 3).  Rather, plaintiff Witherow argues that a violation of the Omnibus Crime

10   Control and Safe Streets Act merely requires intentional interception.  *Id.*  Plaintiff believes the

11   exception to this Act does not apply in this case because he argues that the initial call monitoring was

12   not conducted pursuant to an official policy.  *Id.* at 9.  Further, plaintiff Witherow explains that he

13   "is not required to identify any actual attorney/client information that was discussed during the

14   thirteen (13) calls," as he submitted an affidavit stating that the calls were to his attorneys regarding

15   legal matters.  *Id.* at 4.  Plaintiff Witherow claims that the initial monitoring, which defendants admit

16   to implementing, was a violation of his statutory and constitutional rights and was conducted absent

17   an NDOC policy.  *Id.* at 7.

18   **C.    Defendants' Motion for Summary Judgement on Witherow's SAC**

19       Many of the arguments presented in the briefing for this motion mirror the reasoning

20   provided in the briefing for plaintiff Witherow's motion for partial summary judgment.  Therefore,

21   the court will only briefly restate the arguments here.  In their motion for summary judgment on

22   plaintiff Witherow's SAC, defendants argue that initial monitoring of the calls placed by inmates in

23   Unit 13 at NSP is constitutional and advances a legitimate penological interest (#207, pp. 10-12).

24   Furthermore, if the court does not find the practice to be constitutional, defendants argue they are

25   entitled to qualified immunity.  *Id.* at 12-13.  Defendants also claim that plaintiff Witherow's claims

26   related to the denial of his grievances and supervisory liability should be dismissed.  *Id.* at 14, 25.

27   Defendants explain that an exception protecting law enforcement officers to the Omnibus Crime

28   Control and Safe Streets Act applies in this case.  *Id.* at 14.  Further, defendants believe that plaintiff

1   Witherow fails to demonstrate that any extended monitoring of his calls occurred and claim that he

2   failed to exhaust his administrative remedies. *Id.* at 15, 21. Finally, defendants state that plaintiff

3   Witherow's damages are limited as he does not show any injury, he does not allege facts to support

4   punitive damages, and his claims for injunctive relief are moot. *Id.* at 26-28.

5          Plaintiff Witherow, on the other hand, believes that there is no difference between initial and

6   extended monitoring of calls, as both practices violate his statutory and constitutional rights (#216,

7   pp. 14-18). Further, plaintiff Witherow believes NDOC's practice of monitoring calls in Unit 13 was

8   not implemented pursuant to policy and, in fact, violated Nevada law and NDOC regulations. *Id.*

9   at 14. Plaintiff Witherow also claims that he had an attorney-client relationship with plaintiff Evans

10  and attorneys Picker and Hager and that all of his calls to these attorneys "was for the purpose of

11  consultation on [plaintiff's] legal matters." *Id.* at 5. Additionally, plaintiff Witherow explains that

12  in order for the exception to the Omnibus Crime Control and Safe Streets Act to apply a

13  communications provider would have to furnish law enforcement with the equipment and the person

14  being monitored would have to have notice. *Id.* at 21 (citing *Adams v. City of Battle Creek*, 250 F.3d

15  980, 983-84 (6th Cir. 2001)). Finally, plaintiff Witherow claims he can prove that extended

16  monitoring of his calls occurred, that he did exhaust his administrative remedies, and that he is

17  entitled to damages as he can prove *de minimus* physical injury and facts to support punitive

18  damages. *Id.* at 23-25. Plaintiff dismisses his claim for injunctive relief. *Id.*

19         In their reply, defendants continue to argue that plaintiff Witherow fails to provide evidence

20  to support his claims that he made legal calls, exchanged confidential information, and that prison

21  staff overheard the information (#220, p. 2). Further, defendants note that plaintiff simultaneously

22  claims he did not have notice of the monitoring and he had a reasonable expectation of privacy, but

23  that he can prove his calls were monitored because he heard beeping on the phone and knew about

24  the practice. *Id.* at 7. Defendants also explain that plaintiff misstates prison regulations governing

25  phone calls and fails to recognize the unique circumstances present in Unit 13, which necessitated

26  initial screening of calls. *Id.* at 9.

27  **D.    Defendants' Motion for Summary Judgement on Evans's FAC**

28         Defendants' motion for summary judgment on Evans's complaint first argues that plaintiff

6

1   Evans does not have standing to assert the attorney-client privilege because his interest as an attorney

2   is not legally protected (#206, p. 7). Defendants also argue that due to discovery sanctions against

3   plaintiff Evans, he is precluded from presenting evidence that his calls were legal, nor may he argue

4   that the monitoring of the calls extended beyond an initial screening. *Id.* at 10. Defendants again

5   note that they believe the law enforcement exception to the Omnibus Crime Control and Safe Streets

6   Act applies in this case. *Id.* at 11-12. Defendants argue that plaintiff Evans does not grieve, as he

7   is not an inmate; therefore, the claims against defendants Henley, Donat, and Helling for improper

8   denial of grievances should be dismissed. *Id.* at 12-13. Finally, defendants state that plaintiff

9   Evans's injunctive relief claim is moot because Unit 13 is no longer open. *Id.* at 13.

10          Plaintiff Evans's first "incorporates and merges all of Plaintiff Witherow's Opposition to

11   Defendants' Motion for Summary Judgment" (#215, p. 1). Plaintiff then states that he has "the

12   Constitutional right of privacy, recognized by the Ominous [sic] Crime Control and Safe Street Acts

13   of 1968, OCCASSA, under which Evans is seeking redress under the First Amendment of the

14   Constitution." *Id.* at 4. Therefore, plaintiff Evans believes he is entitled to liquidated damages under

15   the Act. *Id.* at 5. Plaintiff Evans also believes that, despite this court's sanction, he is free to argue

16   that the calls made were legal in nature and that beeping on the line is evidence of monitoring. *Id.*

17   at 3, 5. Plaintiff Evans acknowledges that he does not have a claim regarding the denial of plaintiff

18   Witherow's grievance. *Id.* at 6. Plaintiff concludes by stating that a "significant factual dispute

19   exists as to whether or not Defendants listened, monitored, and eavesdropped Plaintiff's

20   conversations beyond any limited statutory right they have to do so." *Id.*

21          In their reply, defendants point out that in his opposition plaintiff Evans violates the court

22   ordered sanction, which prohibits him from claiming that the seventy-nine calls were legal and not

23   personal calls (#219, pp. 1-2). Further, defendants argue, plaintiff Evans cannot prove that any of

24   the calls are legal in nature because plaintiff Witherow refused to reveal the content of all but five

25   of the calls during his deposition. *Id.* at 2. Defendants also claim that plaintiff Evans violated his

26   discovery sanction again when he argued that beeping is evidence of extended monitoring, an

27   argument he is precluded from asserting. *Id.* at 4.

28   ///

## II.  DISCUSSION & ANALYSIS

**A.   Discussion**

### 1.   Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading only by leave of the court after a responsive pleading has been filed, unless the opposing party consents to the amendment.  Fed. R. Civ. P. 15(a).  However, Rule 15(a) also states that leave to amend "shall be freely given when justice so requires."  *Id.*  There are several factors District Courts should consider when determining whether justice requires the court to grant leave to amend, including undue delay, repeated failure to cure deficiencies in previous amendments, undue prejudice to the opposing party, and futility.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003)(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### 2.   Summary Judgment

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of presenting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr. v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002) (articulating the standard

for authentication of evidence on a motion for summary judgment).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248.  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted but must only determine whether there is a genuine issue of material fact that must be resolved by trial.  *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion.  *See* Addisu v. Fred Meyer, Inc.,198 F.3d 1130, 1134 (9th Cir. 2000).

### 3.     Exhaustion

The failure to exhaust is an affirmative defense, and the defendant bears the burden of raising and proving failure to exhaust.  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), *cert. denied* 540 U.S. 810 (2003).  The failure to exhaust administrative remedies is treated as a matter in abatement, and is properly raised in an unenumerated 12(b) motion. *Wyatt*, 315 F.3d at 1119 (citations omitted); *see also Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988).  As such, failure to exhaust is not properly raised in a motion for summary judgment, but if it is so raised, it should be treated as a motion to dismiss.  *Ritza*, 837 F.2d at 368 (citations omitted).  If the court ultimately finds that plaintiff has not exhausted his nonjudicial remedies, the proper remedy is dismissal of his claims without prejudice.  *Wyatt*, 315 F.3d at 1119-20, as noted in *O'Guinn v. Lovelock Corr. Ctr.*,502 F.3d 1056, 1059 (9th Cir. 2007); *see also Ritza*, 837 F.2d at 368.  In *Ritza*, the court noted the distinction between summary judgment and dismissal for matters in abatement as it concerns the court's authority to resolve factual disputes:

> [One] reason why a jurisdictional or related type of motion, raising matter in abatement . . . , should be distinguished from a motion for summary judgment relates to the method of trial. In ruling on a motion for summary judgment the court should

1
2
3

> not resolve any material factual issue . . . . If there is such an issue it should be resolved at trial . . . . On the other hand, where a factual issue arises in connection with a jurisdictional or related type of motion, the general view is that there is no right of jury trial as to that issue . . . and that the court has a broad discretion as to the method to be used in resolving the factual dispute.

4   *Ritza*, 837 F.2d at 369 (citations omitted).  Therefore, the court must treat the exhaustion issue as one

5   raised in an unenumerated 12(b) motion, and is tasked with resolving factual issues that arise.

6   **B.    Analysis**

7           The court is presented with numerous issues in the four pending motions.  As many of the

8   topics discussed in the motions are duplicative, the court proceeds with its analysis as follows.  First,

9   the court addresses plaintiff Witherow's motion for leave to substitute specific names of Doe

10  defendants (#204).  Second, the court analyzes factual and legal issues presented in the parties'

11  summary judgment motions (#'s 205, 206 & 207).  The court will begin by addressing arguments

12  unique to each plaintiff, including exhaustion of plaintiff Witherow's claims, plaintiff Evans's

13  standing to assert attorney-client privilege, and the effect of previous discovery sanctions against

14  plaintiff Evans.  The court then turns to the central issue in these summary judgment motions - the

15  legality of defendants' monitoring of plaintiffs' calls.  The court addresses both defendants' initial

16  monitoring and alleged extended monitoring, including the defense of qualified immunity.  Third,

17  the court will analyze the specific claims included in both the FAC and SAC for failure to properly

18  respond to plaintiff Witherow's grievances and defendant Skolnik's supervisory liability.  Finally,

19  the court directs its attention to the damages arguments raised in the motions.

20          **1.    Leave to Amend**

21          While the use of Doe defendants is not favored, plaintiffs should be given an opportunity

22  through discovery to determine the identity of alleged defendants who remain unknown at the time

23  a complaint is filed.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Here, plaintiff

24  Witherow filed his motion for leave to substitute specific names of Doe defendants presently listed

25  in the 36th, 44th, 48th, 49th, 57th, 74th, 75th, 81st, 82nd, 89th, 91st, 92nd, and 114th causes of

26  action in the SAC on March 18, 2011 (#204), which is the same day he filed a motion for partial

27  ///

28  ///

summary judgment on all of the same causes of action (#205).[2]  Plaintiff Witherow filed this request approximately two and a half years after lodging his original complaint with the court (#2), and four days before the dispositive motion deadline, which the court extended for the final time to March 22, 2011 (#199).

Plaintiff Witherow had ample time to discover the identity of any Doe defendants through the prolonged discovery process that occurred in this case.  Plaintiff allowed several opportunities to pass to both amend his pleading and to alert the court that defendants were not forthcoming with discovery, resulting in plaintiff Witherow's inability to discover the identity of the Doe defendants. Furthermore, as it turns out, the Doe defendants' identities were not a mystery at all; rather, plaintiff Witherow seeks to substitute named defendants for the Doe defendants listed in these causes of action.  It seems quite unlikely to the court that plaintiff Witherow could not have identified defendants Henley, Donat, Helling, and Skolnik's involvement in these claims at the outset of this action, let alone at a time prior to this late date.  Indeed, he described their involvement in other causes of action included in the complaint.

Plaintiff Witherow's vague, conclusory statement that justice requires leave to be granted does not overcome the fact that he unduly delayed seeking amendment and has not shown good cause for the delay or the amendment.  Similarly, plaintiff Witherow's explanation that the court is compelled to construe his pleading liberally because he was proceeding *pro se* at the time he filed the SAC, does not explain the delay in seeking leave to amend between the time when plaintiff's counsel appeared in the case on January 6, 2011 (#194) and the filing of this motion three months later, and notably only four days prior to the deadline for dispositive motions.  Allowing plaintiff Witherow to substitute named defendants for Doe defendants at this late date would further delay this case, a step the court clearly stated it would not take under any circumstances (#199), and would prejudice defendants.  As a result, the court recommends that plaintiff Witherow's motion for leave to substitute specific names of Doe defendants (#204) be denied.

As an aside, the court notes that in plaintiff Witherow's deposition testimony from October

---

[2]      Plaintiff's motion for partial summary judgment also includes the 115th and 116th causes of action (#205).

25, 2010, which is attached to the motions for summary judgment also considered in this Report and Recommendation, he comments that he is "going to try and get [defendants Henley, Helling, and Skolnik] replaced as part of these Doe defendants in the Cause of Action" (Ex. A, #207-1, p. 12). Plaintiff Witherow continues to explain that he does not intend to seek leave to amend "because the court has refused to allow me to amend," but instead planned to substitute in the named defendants at some point after parties resolved their discovery issues. *Id.* at 13. While the court does not rely on this deposition testimony in denying plaintiff Witherow's motion (#204), it does find this testimony telling in light of plaintiff Witherow's arguments in his motion, and it is indicative of plaintiff Witherow's sophistication, notwithstanding his *pro se* status for portions of this litigation.

### 2.    Summary Judgment Motions

#### a.    *Exhaustion of Plaintiff Witherow's Claims*

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Although once within the discretion of the district court, the exhaustion of administrative remedies is now mandatory. *Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citing *Booth*, 532 U.S. at 739-40 n.5). Even when the prisoner seeks remedies not available in the administrative proceedings, notably money damages, exhaustion is still required prior to filing suit. *Booth*, 532 U.S. at 741. Recent case law demonstrates that the Supreme Court has strictly construed section 1997e(a). *Id.* at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

Plaintiffs must properly exhaust nonjudicial remedies as a precondition to bringing suit. The PLRA requires "proper exhaustion," meaning that the prisoner must use "all steps that the agency holds out, and doing so *properly* (so that the agency addresses the merits)." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Requiring exhaustion prior to filing suit furthers the congressional objectives of the PLRA as set forth in *Porter*. *See id.* at 1200. "'[A]pplicable procedural rules' [for proper

1  exhaustion] are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*,

2  549 U.S. 199, 218 (2007).

3      Where prison grievance procedure does not identify the requisite level of detail required for

4  an inmate's grievance, the Ninth Circuit adopted the Seventh Circuit's standard for factual

5  specificity, which was articulated in *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).  *Griffin v.*

6  *Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (citing *Strong*, 297 F.3d at 650).  "'[A] grievance

7  suffices if it alerts the prison to the nature of the wrong for which redress is sought.'"  *Id.* (quoting

8  *Strong*, 297 F.3d at 650).  Further, the Supreme Court noted that "exhaustion is not *per se* inadequate

9  simply because an individual later sued was not named in the grievances." *Jones*, 549 U.S. at 219.

10      Defendants contend in their motion for summary judgment against plaintiff Witherow's SAC,

11  that he failed to exhaust his administrative remedies with respect to any calls that took place after

12  November 21, 2007, which includes any calls that plaintiff alleges defendant Connally monitored,

13  as plaintiff Witherow claims she began working in Unit 13 on January 1, 2008 (#207, p. 22; Ex. N,

14  #207-11, pp. 14-32).  Defendant Witherow states that he filed a grievance against "bubble staff" for

15  their interception and eavesdropping (#216, p. 23).  He states further that he was "prohibited by

16  NDOC AR 740.09(2)(B) from filing additional grievances concerning the interception of his attorney

17  client communication."  *Id.*

18      To support this proposition, plaintiff Witherow attaches a copy of AR 740 that became

19  effective February 12, 2010, long after any of the alleged violations for which plaintiff Witherow

20  now seeks relief (Ex. 22, #216-2, p. 2).  Defendants point out this deficiency, but fail to attach the

21  applicable version of the regulation for the court's review (#220, p. 14).  Therefore, the court is left

22  to evaluate whether plaintiff exhausted his administrative remedies without a relevant copy of the

23  regulation detailing the grievance process plaintiff should have followed.  *See Jones*, 549 U.S. at

24  218.

25      As the court does not have the benefit of any clear regulatory language to support defendants'

26  claim that plaintiff failed to exhaust his administrative remedies by not grieving each and every call

27  he claims staff in Unit 13 intercepted, the court relies on the Ninth Circuit standard for factual

28  specificity when the standard articulated in the prison regulation is unclear.  *Griffin*, 557 F.3d at

1   1120.  The court finds that plaintiff Witherow's grievance sufficiently alerted NDOC and defendants

2   to the conduct - interception of legal calls while he was housed in Unit 13 - for which plaintiff

3   Witherow sought redress.  Further, the court relies on *Jones* in finding that plaintiff Witherow's

4   grievance is not deficient simply because he did not identify defendant Connally by name in his

5   grievances, though he is now pursuing claims against her in his civil suit.  *Jones*, 549 U.S. at 219.

6   Rather, plaintiff Witherow stated clearly in his grievance that he believed staff in Unit 13 was

7   illegally monitoring his legal calls (Ex. N, #207-11, p. 20).  In fact, plaintiff Witherow also noted

8   in the grievance that "[n]ames of the U12 + U13 bubble officers . . . [are] not available to me," which

9   the NDOC did not cite as a procedural defect in its response to plaintiff Witherow.  *Id.* at 20-21, 25.

10   The court believes this is sufficient notice to defendants of the officials responsible for the conduct

11   about which plaintiff Witherow complained.

12       Therefore, the court finds that plaintiff Witherow exhausted his administrative remedies and

13   recommends denial of defendants' request to dismiss plaintiff's claims for the period after November

14   21, 2007, and his claims against defendant Connally.

15               ***b.       Plaintiff Evans's Standing to Protect the Attorney-Client Privilege***

16       The attorney-client privilege "can be invoked only at the instance of the client."  *U.S. v.*

17   *Layton*, 855 F.2d 1388 (9th Cir. 1988) (citing *United States v. Osborn*, 409 F. Supp 406, 409 (D. Or.

18   1975),  *overruled in part on other grounds by People of Territory of Guam v. Ignacio*, 10 F.3d 608,

19   612 n.2 (9th Cir. 1993).  Based on this well established rule, defendants question plaintiff Evans's

20   standing to assert attorney-client privilege, noting that he "alleges violations of the attorney-client

21   privilege as the basis for his constitutional claims pursuant to the Fourth and Fourteenth

22   Amendments" (#206, p. 8).  Plaintiff Evans concedes that he cannot "invoke plaintiff Witherow's

23   right to privileged communication with his lawyer" (#215, p. 4).  However, plaintiff Evans states that

24   "[i]t is the Constitutional right to privacy, recognized by the Ominous [sic] Crime Control and Safe

25   Street Act of 1968, OCCASSA, under which Evans is seeking redress under the First Amendment

26   of the Constitution."  *Id.*

27       The court is uncertain what plaintiff Evans means when he claims that he has a statutory right

28

14

and simultaneously claims he "is seeking redress under the First Amendment."[3]  The court will construe plaintiff Evans's argument to be that he is seeking relief under the Act and not the First,[4] Fourth, or Fourteenth Amendments of the Constitution, as he does not supply any facts to support such claims in his opposition, nor can he assert any such facts, since plaintiff Witherow, not plaintiff Evans, has the right to protect privileged attorney-client information.  Therefore, the court recommends that summary judgment be granted in defendants' favor and against plaintiff Evans for his claims for relief under the Fourth and Fourteenth Amendments in the FAC.  Additionally, based upon the same reasoning, the court recommends that summary judgment be granted in defendants' favor and against plaintiff Evans for his claim against defendant Skolnik for the alleged failure to adopt appropriate policies to protect inmates' attorney-client communications.

On a somewhat related note, defendants point out that as an attorney plaintiff Evans "has no basis to bring claims against [defendants Henley, Donat, and Helling] for their alleged failure to properly investigate Plaintiff Witherow's grievance," as plaintiff Evans is not required to file grievances. *Id.* at 13.  Plaintiff Evans concedes this point, without comment, in his opposition (#215, p. 6).  Therefore, the court recommends that summary judgment be awarded in defendants' favor and against plaintiff Evans for his claims against defendants Donat, Helling, and Henley in the FAC.

### c.  *Effect of Previous Sanctions Against Plaintiff Evans*

After dismissal of claims against defendants Donat, Helling, Henley, and Skolnik, plaintiff Evans's remaining claim is against defendant Baker for intercepting and eavesdropping on plaintiffs' calls during the time period from April 21, 2007 through December 21, 2007 (333, p. 6).

This court sanctioned plaintiff Evans for discovery abuses (#200).  Because plaintiff Evans failed to respond to defendant Skolnik's interrogatories, the court sanctioned him by prohibiting him from "introducing the subject matter of these interrogatories into evidence to support his claims or oppose defendants." *Id.* at 13-14.  Those interrogatory topics included the content of the calls

---

[3]     Additionally, the court notes that the Act under which plaintiff is suing is called the Omnibus Crime Control and Safe Streets Act, not the "Ominous" Crime Control and Safe Streets Act.

[4]     Plaintiff Evans does not allege a First Amendment claim in the FAC (#33), though he references such a claim in his opposition (#215, p. 4).

1   between plaintiffs and the facts upon which plaintiffs base their belief that the calls were monitored.

2   *Id.* at 13.  Defendants contend that because plaintiff Evans is precluded from claiming his calls were

3   legal and from presenting evidence to counter defendants' argument that monitoring did not extend

4   beyond an initial screen, his claims must fail (#206, p. 11).

5        Plaintiff Evans, on the other hand, states that he "is free to make [these] argument[s] in

6   relation to the causes of action which still exist against the remaining Defendants and not necessarily

7   solely limited to Defendants Helling and Henley" (#215, p. 5).  He goes on to explain that his

8   deposition testimony attached to defendants' motion demonstrates that he "fully and completely

9   answered all non-privileged questions put to him at deposition."  *Id.* at 6.  To support his claims,

10  plaintiff Evans relies on his own briefing, which does not include any supporting exhibits and states

11  that he "hereby incorporates and merges all of Plaintiff Witherow's Opposition to Defendants'

12  Motion for Summary Judgment as those arguments and facts apply to causes of action common to

13  both Plaintiff Witherow and Plaintiff Evans."  *Id.* at 1.

14       First, plaintiff Evans is not permitted to incorporate or merge plaintiff Witherow's briefing

15  and exhibits.  While plaintiffs initiated this case together, at this point in the litigation they are

16  proceeding separately under two distinct pleadings and with different counsel (#'s 33 & 80).

17  Additionally, Federal Rule of Civil Procedure 56 requires a party "asserting that a fact cannot be or

18  is genuinely disputed must support the assertion" with citations to "particular parts of materials in

19  the record." Fed. R. Civ. P. 56(c)(1)(A).  Plaintiff Evans's perfunctory statement that all of plaintiff

20  Witherow's arguments are to be incorporated into his does not meet this standard, and the court

21  declines to sift through the volumes of exhibits provided for these motions to identify "particular

22  parts of materials" that are relevant to plaintiff Evans.  Finally, in light of the discovery sanctions

23  imposed by this court against plaintiff Evans, which severely limit his available arguments, the court

24  considers the incorporation of plaintiff Witherow's materials into his own motion as an attempt to

25  circumvent the court's order.  This will not be allowed.

26       Second, plaintiff Evans is incorrect that he is free to make any arguments he would like with

27  respect to the remaining defendants and causes of action.  Plaintiff Evans also appears to miss the

28  point of the court's sanction when he states that he answered all questions posed by defendants

1  during his deposition.  The court sanctioned plaintiff Evans for his repeated failure to respond to

2  defendants' interrogatories.  Plaintiff Evans's responses during his deposition do not affect the

3  court's sanction order.

4       As defendants correctly noted, plaintiff Evans is precluded from making any arguments with

5  respect to the nature of the calls between him and plaintiff Witherow.  Likewise, he may not make

6  any arguments about why he believes that defendants engaged in extended monitoring.  This leaves

7  plaintiff Evans's remaining claim of violations of the Omnibus Crime Control and Safe Streets Act

8  against defendant Baker.  The relevant inquiry for his claim against defendant Baker is whether the

9  initial screening of calls violated the statute, since he will not be able to prove extended monitoring,

10  given the limitation imposed by the sanction.  Because the claim that initial screening violates the

11  statute is not premised on the status of the calls, it is not affected by the sanction.  Therefore, this

12  claim is analyzed below.

13            ***d.    Legal Calls - Initial & Extended Monitoring***

14       Plaintiffs believe that both the practice of initially screening plaintiff Witherow's calls to his

15  attorneys and the alleged extended monitoring of plaintiff Witherow's calls to his attorneys are

16  unconstitutional under the Fourth and Fourteenth Amendments and statutorily prohibited under the

17  Omnibus Crime Control and Safe Streets Act (#'s 205, 215 & 216).  Specifically, plaintiff Witherow

18  believes that Nevada Revised Statutes ("NRS") §§ 49.055 and 209.419(4)(d), and Administrative

19  Regulations ("AR") 718.01, 722.07, and 722.11(4) all recognize the rights of inmates to have

20  confidential communication with their attorneys and outline a policy for protecting that right.

21  Therefore, prison officials who engaged in initial screening and alleged ongoing monitoring of

22  plaintiffs' calls acted without statutory or regulatory authority (#205, p. 11; Ex. 17-20, #'s 205-16

23  to 205-20).[5]  The court relates the pertinent portions of those statutes and regulations here, including

24  additional passages that the court deems relevant to the matter:

25  ///

26  ───────────────

27      [5]    Plaintiff Witherow attaches multiple versions of ARs that were in effect at the time of the alleged violations.  It seems that NDOC updated the ARs during the time period that plaintiffs claim their calls were monitored.  The court presumes this is why plaintiff Witherow attaches two versions of the same

28  AR for AR 718 and AR 722, though he did not offer such an explanation (Ex. 17-20, #'s 205-17 to 205-20).

**NRS § 49.055: "Confidential" defined**

A communication is "confidential" if it is not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

**NRS § 209.419(3-4): Interception of offender's communication by telephone: Notice; exceptions.**

  (2) The Director shall provide notice or cause notice to be provided to both parties to a communication which is being intercepted . . . . For the purposes of this section, a periodic sound which is heard by both parties during the communication shall be deemed notice to both parties that the communication is being intercepted.

  (3) The Director shall adopt regulations providing for an alternate method of communication for those communications by offenders which are confidential.

  (4) Except as otherwise provided . . . , a communication made by an offender is confidential if it is made to:

   . . .

   (d) An attorney who has been admitted to practice law in any state or is employed by a recognized agency providing legal assistance.

Ex. 16, #205-16, p. 2.

**AR 718.01(3, 10): Inmate personal telephone usage (effective date 5/8/08)**

3. Telephone calls, except calls between an inmate and his attorney, must be monitored and/or recorded.

10. Inmates in segregated housing may have their personal telephone access restricted for safety and security reasons.

Ex. 18, #205-18, pp. 2-3.

**AR 722.07(1.2-1.3): Inmate legal access (effective date 9/6/03)**

1.1 All inmates are to use the unit or yard telephones for legal calls.

  1.1.1 All legal calls will be collect.

  1.1.2. Institutional telephones, including but not limited to law library telephones, will not be used for inmates to make legal calls except under exceptional circumstances . . .

1.2 Approved legal calls placed for inmates on institutional telephones by staff shall be handled as follows:

  • The staff member will dial the number to ensure the number is to a legal representative; and

  • The staff member shall observe the inmate throughout the entire duration of the call.

1.3 After the staff member determines the call is legal in nature the staff member will not listen to the call.

Ex. 19, #205-19, p. 3.

**AR 722.11(4): Inmate legal access (effective date 2/8/08)**

  4. Legal calls placed for inmates on institutional phones by staff should have the number dialed by the staff member to insure it is a legal call; observe the inmate throughout the call, but not listen to the call.

Ex. 20, #205-20, p. 3.

Based on these statutes, regulations, and other facts, plaintiff Witherow seeks summary judgment

18

on fifteen causes of action alleged in the SAC for purported violations of his constitutional and statutory rights (#205, p. 2).  Plaintiff Witherow also opposes defendants' motion for summary judgment on the SAC based on this understanding of the statutory and regulatory framework (#216).

Defendants argue that the practice of initially screening inmates calls on Unit 13 was "designed to minimize the number of improper calls being made and allow others within segregation an equal chance to use the phone" (#212, p. 7).  Defendants state that prison officials implemented the practice of initially monitoring calls in Unit 13 pursuant to AR 718.01 § 3, NSP Institutional Procedure ("IP") 7.5 § VI, and applicable post orders.  The court notes that the relevant section of AR 718.01 is the same section that is cited above, and summarizes the other relevant procedures and orders here:

**NSP IP 7.5 § VI(c):   Telephone usage for lockup inmates**

1.    Inmate legal and personal telephone calls will be handled via the Unit Officer.  A written request will be submitted 24 hours in advance for personal or legal telephone calls to Unit Officers.
   a.    Telephone Log will be maintained in all Lockup Units.
   b.    Specific procedures for telephone usage are noted in Post Orders.
   c.    Legal calls will be permitted as needed.  All legal calls must be initially verified by receiving party or will be terminated.
Ex. H, #207-8, pp. 29-30.

**Post Order - Nevada State Prison**
K.    Telephone Calls
   1.    Legal Calls
      c.    All legal telephone calls will be recorded in the unit telephone log, recording the date, time of the call, inmate name, DOP number, the telephone number requested and whether the call was completed or not.
      d.    All phone calls are subject to monitoring to determine validity.  Once a legal call is confirmed, the monitoring will cease. DO NOT LISTEN IF IT IS A LEGAL CALL.  Switch off phone monitor at adjacent switch next to phone  switch.
Ex. J, #207-8, p. 76.

Defendants argue further that plaintiffs fail to offer evidence that extended monitoring occurred (#207, p. 15).  Based on their belief that the practice of initially screening calls is permitted, their contention that plaintiffs do not offer evidence that they shared privileged information or that extended monitoring occurred, and several other deficiencies, defendants seek summary judgment on plaintiffs' Fourth and Fourteenth Amendment claims, and their statutory claims (#207, p. 29 & #206, pp. 9-12).

19

i.     Fourth Amendment

While "a prisoner does not lose all rights to privacy," *Franklin v. Oregon*, 662 F.2d 1337, 1347 (9th Cir. 1981), inmates have "extremely limited" Fourth Amendment privacy rights while incarcerated.  *United States v. Vallez*, 653 F.2d 403, 406 (9th Cir. 1981) (citing *Stroud v. United States*, 251 U.S. 15, 15-21-2 (1919)), *cert. denied* 454 U.S. 904 (1981).  Only when the state intrudes into an area "in which there is a 'constitutionally protected reasonable expectation of privacy,'" is the Fourth Amendment implicated.  *New York v. Class*, 475 U.S. 106, 112 (1986) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J. concurring)).   A reasonable expectation of privacy only exists if "(1) the defendant has an 'actual subjective expectation of privacy' in the place searched and (2) society is objectively prepared to recognize that expectation."  *United States v. Van Poyck*, 77 F.3d 285, 290 (9th Cir. 1996) (quoting *United States v. Davis*, 932 F.2d 752, 756 (9th Cir. 1991)), *cert. denied*, 519 U.S. 912 (1996).

The Ninth Circuit held that inmates do not have an objectively reasonable expectation of privacy in their outbound personal calls from prison; therefore, the Fourth Amendment is "not triggered by the routine taping of such calls."  *Id.* at 291.  There is, however, a distinction for inmates' "properly placed" legal calls to attorneys, in which inmates may have a reasonable expectation of privacy based upon the attorney-client privilege.  *Id.* at 291 n.9.

Attorney-client privilege is an evidentiary privilege intended to "aid[] the administration of justice by helping lawyers get full information from their clients, in the faith that such knowledge is essential to effective representation."  1 Christopher B. Mueller & Laird Kirkpatrick, Federal Evidence § 1:26 (3d ed. 2011).  The privilege applies:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*United States v. Landof*, 591 F.2d 36, 38 (9th Cir. 1978).  The attorney-client privilege is not a constitutional right.  *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985), *cert. denied* 475 U.S. 1088 (1986).  Likewise, there is not a private cause of action for damages available to plaintiffs alleging breach of the privilege.  *Nealy v. Hamilton*, 837 F.2d 210, 212-13 (5th Cir. 1988).

20

1    The relevant question in the instant matter, which links the attorney-client privilege to a

2    constitutionally protected interest, is whether plaintiff Witherow reasonably believed his calls to

3    plaintiff Evans and attorney Hager were confidential, thus triggering the Fourth Amendment.  *See*

4    *Van Poyck*, 77 F.3d at 290.  Although it is objectively reasonable for confidential communication

5    between an inmate and his attorney to remain private, this line of inquiry addresses the second prong

6    of the Fourth Amendment requirement that the inmate also have an "actual subjective expectation

7    of privacy." *Van Poyck*, 77 F.3d at 290 (quoting *Davis*, 932 F.2d at 756).  The burden of proof is

8    on the party asserting attorney-client privilege to prove that he reasonably believed the

9    communication was confidential.  *United States v. Gann*, 732 F.2d 714, 723 (9th Cir. 1984), *cert.*

10   *denied* 469 U.S. 1034 (1984).

11   However, even if the Fourth Amendment is triggered by state conduct which infringes upon

12   an inmate's reasonable expectation of privacy, institutional security concerns may justify the conduct

13   and render it reasonable.  *Id.* (citing *United States v. Amen*, 831 F.2d 373, 379 (2d Cir. 1987), *cert.*

14   *denied* 485 U.S. 1021 (1988)).  Likewise, inmate consent to an intrusion on his reasonable

15   expectation of privacy nullifies a Fourth Amendment claim based on the invasion.  *Id.* (citing *United*

16   *States v. Morales*, 972 F.2d 1007, 1010 (9th Cir. 1992), *cert. denied*, 507 U.S. 1012 (1993)).

17   Based upon the analysis above granting summary judgment for defendants for plaintiff

18   Evans's constitutional claims, the court only analyzes plaintiff Witherow's Fourth Amendment

19   causes of action in this section.  Defendants do not seem to dispute the notion that inmates making

20   "properly placed" legal calls have an objective and, likely, subjective expectation of privacy in that

21   communication.  Rather, defendants claim that plaintiff Witherow, specifically, did not have a

22   reasonable expectation of privacy in his calls because he cannot show they were "properly placed"

23   legal calls (#207, p. 24).  Specifically, defendants question the nature of the plaintiffs' relationship,

24   the information discussed in the calls, and whether plaintiff Witherow was aware of the monitoring

25   and thereby consented to it.  *Id.* at 9-10, 15.  Plaintiff Witherow states in his affidavit, attached to

26   his motion for partial summary judgment, that he "believed that [his] attorney/client telephone calls

27   with those attorneys were confidential and would not be intercepted; and at no time did [he] consent

28   to the monitoring of [his] confidential attorney/client telecommunications" (Ex. 1, #205-1, p. 2).  On

21

its face, this evidence seems to present a disputed issue of material fact - namely, whether plaintiff Witherow had a subjective expectation of privacy - which may trigger Fourth Amendment protection.  However, plaintiff Witherow's deposition testimony further illuminates the issue.

During his deposition, plaintiff Witherow described a long history of suspecting that prison staff monitored inmates' legal calls (Ex. A, #207-1, pp. 63-74).  Starting in 1992 or 1993, while plaintiff was incarcerated in Ely State Prison, he "realized that the bubbles had the ability to listen to legal calls." *Id.* at 65.  When asked about other monitoring events, plaintiff Witherow said, "there were various incidents that occurred over the years." *Id.*  Plaintiff Witherow then related the details of an event in 1995, during which a correctional officer said, "Witherow, they're listening to every one of your legal calls to Evans." *Id.* at 67.  Based on this statement, plaintiff Witherow said that he and plaintiff Evans discussed the possibility of asking "Judge Hagan [sic] . . . to authorize us to do a sting operation against the correctional officers that were listening to our phone calls." *Id.* at 68.  While such an operation did not occur, plaintiff Witherow testified that he and plaintiff Evans were aware of the monitoring of their calls regarding their "investigation into allegations of excessive force by intake officers against new prisoners." *Id.* at 70-71.

Plaintiff Witherow went on to explain that monitoring of calls between attorneys and their clients has "been an ongoing problem for 17 years, that [he's] aware of," but that he expected that his calls would not be monitored because the "statute says they can't," attorney-client privilege prevents it, and he believes his constitutional right to privacy prohibits such monitoring. *Id.* at 73-74.  Finally, in plaintiff Witherow's opposition to defendants' summary judgment motion against him, he states that he "did not consent to the interception and monitoring of his outgoing legal calls even though he strongly suspected and believed their was a potential possibility that his outgoing calls were being illegally intercepted and monitored by prison officials" (#216, p. 20).

In addition to describing his suspicions of ongoing monitoring of attorney-client calls, plaintiff Witherow detailed at least two calls during which he and plaintiff Evans addressed defendants Baker and Connally directly, believing that they were monitoring the calls, and "said certain things to get [them] off the phone" (Ex. A, #207-1, p. 58).  Plaintiff Witherow estimated that these calls occurred in June or July of 2007 and May 7, 2008. *Id.*  In June 2007, plaintiff Witherow

1   testified that he also overheard another inmate's call with his attorney being broadcast through the

2   bubble. *Id.* at 56.  Plaintiff Witherow explained that around the same time he and plaintiff Evans

3   had an in-person, confidential conversation at the prison during which plaintiff Witherow explained

4   "that [he] was going to provoke an incident and try to get [defendant Baker] to do something," by

5   making nasty remarks about "anyone that believed in God or had religious beliefs" during one of

6   their phone conversations they believed defendant Baker was monitoring (Ex. A, #207-2, pp. 7-12).

7   Plaintiff Witherow stated that he made such comments during a call that took place sometime

8   between June and July 2007.  *Id.* at 11-12.  Plaintiff Witherow believes that defendant Baker

9   changed her behavior toward him after he made these comments. *Id.* at 12.       Based on plaintiff

10   Witherow's deposition testimony and the statement he made in his opposition to defendants' motion,

11   the court concludes that he was quite convinced that his legal calls were being monitored.  In fact,

12   plaintiff Witherow claims that he and plaintiff Evans have discussed the issue of monitoring on at

13   least a few occasions over the past eleven years, including coordinated attempts to engage the

14   judiciary in a "sting operation" and to provoke defendant Baker in order to collect evidence of

15   monitoring.  Despite these strongly held beliefs, open discussions about the issue with his attorney,

16   and related plans to bait NSP prison officials, plaintiff Witherow claims he did not believe that the

17   NDOC would monitor his legal calls because it is against the statute and his constitutional rights.

18   The court is simply not convinced by this argument.

19         It is evident that plaintiff Witherow did not have an "actual subjective expectation of privacy"

20   during these calls with plaintiff Evans or any other attorney.  In fact, plaintiff Witherow states that

21   he and plaintiff Evans communicated directly with the person they believed to be monitoring their

22   calls.  Not only is this not a subjective belief that the calls were private, it also serves as a waiver of

23   the attorney-client privilege for instances during which they knew another person was "present" for

24   the call.  Additionally, the court views the admitted ongoing acknowledgment of the prison official

25   believed to be monitoring the call and the specific plan to bait defendant Baker to be consent to

26   monitoring for those specific calls.  After all, had the plaintiffs not consented to the monitoring, the

27   plan to bait defendant Baker, which plaintiffs believed would cause her to retaliate against plaintiff

28   Witherow thus proving that monitoring of calls occurred, would have failed.

1    For these reasons, the court finds that plaintiff Witherow did not have an "actual subjective

2    expectation of privacy" that his calls to his attorneys, including plaintiff Evans, were private.

3    Further, by his conduct, he demonstrated that if the calls were indeed monitored, he consented to that

4    monitoring on at least a few occasions, and in fact relied on the purported monitoring to fulfill his

5    plan to bait defendant Baker.  As a result, the court finds that the Fourth Amendment was not

6    triggered because plaintiff Witherow did not have a subjective reasonable expectation of privacy in

7    his outgoing calls to his attorneys.  Further, even if the Fourth Amendment was triggered, plaintiff

8    Witherow's claims are vitiated for several of his calls by his consent to the monitoring.  Therefore,

9    the court recommends that defendants' motion for summary judgment on plaintiff Witherow's

10    claims for violation of his Fourth Amendment rights be granted and that plaintiff Witherow's motion

11    for partial summary judgment on the same be denied.

12    Based on this recommendation it is unnecessary for the court to determine for which specific

13    calls plaintiff Witherow consented to monitoring.  Further, the court need not consider defendants'

14    numerous arguments and evidence about whether the calls were indeed legal, based on defendants'

15    questions about the nature of plaintiffs' relationship and the content of their calls.  The court also

16    does not analyze whether a breach of the attorney-client privilege occurred because plaintiffs offer

17    no evidence that defendants used any of the information gleaned from the monitored calls.  Likewise,

18    the court does not need to differentiate between initial or ongoing monitoring at this stage because

19    the Fourth Amendment is not triggered in either case.  Finally, the court does not reach the issue of

20    whether the practice of initial monitoring was in response to a legitimate institutional security

21    concern.  The court does note that Unit 13 at NSP is no longer open so there is no evidence that

22    defendants still use this practice at NSP.

23                    ii.        Omnibus Crime Control and Safe Streets Act

24    Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510,

25    prohibits intentional use of "electronic, mechanical, or other device to intercept any oral

26    communication." 18 U.S.C. § 2511(1)(b).  The Act applies to the prison system.  *Amen*, 831 F.2d

27    at 373.  However, there are exceptions to the Act which commonly apply in the prison context.  See,

28    e.g., *Van Poyck*, 77 F.3d at 291-92; *Amen*, 831 F.2d at 378.  First, oral communication may be

24

1    intercepted by law enforcement officers acting in the ordinary course of their duties.  18 U.S.C. §

2    2510(5)(a).  Courts, including the Ninth Circuit, have held that prison officials who record inmates'

3    calls are law enforcement officers acting within the ordinary course of their duties.  *Van Poyck*, 77

4    F.3d at 292 (citing cases from the Sixth and Seventh Circuits that have held the same).  Second, if

5    an inmate consents to interception of his calls, the Act is not violated.  18 U.S.C. § 2511 (2)(c).

6    "Consent may be express or may be implied in fact from 'surrounding circumstances indicating that

7    the [defendant] knowingly agreed to the surveillance.'"  *Van Poyck*, 77 F.3d at 292 (quoting *Amen*,

8    831 F.2d at 378).

9         Here, the court considers plaintiff Witherow's and plaintiff Evans's claims for violation of

10   the Omnibus Crime Control and Safe Streets Act.  First, it is clear from *Van Poyck* and related cases

11   that prison officials who monitor inmates' personal phone calls are acting within the ordinary course

12   of their duties, thus triggering the law enforcement exception to the Act.  Additionally, in many of

13   these cases inmates consent to monitoring of their personal calls by signing consent forms or

14   listening to or reading posted notices about call monitoring, which implicates the consent exception

15   to the Act.  Therefore, to prevail on their claims for violation of the Act, plaintiffs Witherow and

16   Evans must show that the calls they believe defendants monitored were indeed legal calls, and not

17   simply personal or business conversations.  As discussed above, due to the discovery sanctions this

18   court entered against plaintiff Evans, he is unable to offer evidence now or at the time of trial that

19   his calls with plaintiff Witherow were legal calls.  Therefore, the court recommends that summary

20   judgment be granted in favor of defendants for plaintiff Evans's claims under the Omnibus Crime

21   Control and Safe Streets Act.

22        Plaintiff Witherow claims that both the initial screening and alleged extended monitoring of

23   his calls to plaintiff Evans and attorney Hager are impermissible under the Act.  It is quite clear to

24   the court that defendants' initial screening of all calls in Unit 13 implicates the law enforcement

25   exception to the Act, which allows oral communication to be intercepted by law enforcement officers

26   acting in the ordinary course of their duties.  Plaintiff Witherow seems to argue that because this

27   practice was not an AR, but rather a post order, that the law enforcement exception does not apply

28   (#216, p. 21).  Plaintiff Witherow believes that in order for the law enforcement exception to apply,

he must have been provided notice of the monitoring and the equipment must have been provided by a communications provider. *Id.* (citing *Adams,* 250 F.3d at 983). Plaintiff Witherow complains that post orders are confidential; therefore, he had no notice. *Id.* He also states that the interception equipment used in Unit 13 was not provided by a telecommunications provider, which he bases upon his review of the photographs provided by defendants in their motion. *Id.*

Although plaintiff Witherow raises the issue of whether the monitoring equipment used in Unit 13 was provided by a telecommunications provider, notwithstanding plaintiff Witherow's reliance on the explanation in *Adams v. City of Battle Creek,* 250 F.3d 980, 983 (6th Cir. 2001), the court's review of the statute reveals that the distinction does not apply in this case. The definitions section of the 28 U.S.C. 2510(5) states:

> (5) "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication *other than–*
> (a) *any telephone or telegraph instrument, equipment or facility, or any component thereof,* (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; *or (ii) being used* by a provider of wire or electronic communication service in the ordinary course of its business, or *by an investigative or law enforcement officer in the ordinary course of his duties*;

28 U.S.C. § 2510(5) (emphasis supplied). The relevant portion of the exception states that devices used to intercept calls do not include telephone equipment being used by an "investigative or law enforcement officer in the ordinary course of his duties." *Id.* The reference to the equipment being provided by "a provider of wire or electronic communication service" does not refer to the law enforcement exception as the two are separated by the word "or" indicating an option. *Id.* Either way, plaintiff does not supply any facts about the source of the equipment to support this argument so this court disregards it.

Instead, the court focuses on whether plaintiff Witherow received notice of the initial monitoring practice. Plaintiff Witherow argues that because the post order authorizing initial screening of calls in Unit 13 was confidential, he did not receive notice. Therefore, he believes the practice is not covered by the law enforcement exception and thus violates the Act. However, given that the practice only involves monitoring of the exchange of salutations and, if necessary, enough

1    information to determine if the call is personal or legal, the court believes plaintiff did have notice,

2    as the prison routinely and openly monitors personal calls which include such information.  In other

3    words, plaintiff Witherow did not need to receive special notice that the personal portions of his

4    phone calls may be monitored, which is all that the practice allowed, since it is common knowledge

5    that personal calls may be monitored in prison.  Therefore, the court finds that the law enforcement

6    exception to the Act applies to the practice of initially screening calls.[6]

7            Plaintiff Witherow also argues that the initial screening of calls is not a policy, but rather a

8    practice that conflicts with state statute and NDOC regulations.  The court assumes that plaintiff

9    makes this argument to suggest that because the practice does not comport with state law and prison

10   regulation, it cannot constitute the "ordinary course of business" for prison officials.  However, the

11   court is unclear why the distinction between a practice and policy is significant, and plaintiff offers

12   no explanation.  Further, upon review of the state statutes and regulations, the court does not find

13   that the practice of screening calls to determine whether they are personal or legal runs afoul of the

14   applicable statutes and regulations, which protect confidential legal communication between a

15   lawyer and his inmate client.  As explained above, listening to salutations and just enough

16   information to discern that a call is legal, if necessary, does not compromise attorney-client

17   communications.  Further, as defendants pointed out, plaintiff Witherow mistakenly relies on

18   portions of the regulations that apply to institutional phones, which do not include the Unit 13

19   portable phones circulated to inmates.

20           The court recommends that summary judgment be granted in favor of defendants and against

21   plaintiff Witherow as to the practice of initially screening calls under the Omnibus Crime Control

22   and Safe Streets Act.  Moreover, as detailed above, plaintiff Witherow had, according to his own

23   deposition, over eleven years of suspicions that the prison monitored his legal calls, which he

24   believes he confirmed by his baiting of defendant Baker.  The court finds plaintiff Witherow's claim

25   that he did not have notice to be disingenuous.

26   _____

27           [6]     The parties disagree about whether qualified immunity applies to initial screening of calls
     under the Omnibus Crime Control and Safe Streets Act (#216, pp. 5-6; #220, p. 13).  The court does not
28   reach the qualified immunity argument because it finds that the law enforcement exception in the Act applies
     to initial screening of plaintiff Witherow's calls.

1    With respect to the allegation that defendants engaged in extended monitoring of plaintiff

2    Witherow's calls, the court finds that there exist genuine issues of material fact about whether the

3    calls were monitored beyond the initial screening and whether the calls were legal - not personal -

4    communications.  Further, the law enforcement exception to the Act does not apply to extended

5    monitoring, as extended monitoring is not within the ordinary course of defendants' duties.

6    Likewise, as described above, plaintiff Witherow consented to monitoring of his calls in a few

7    instances by acknowledging and/or baiting the alleged monitor of the calls, but the court declines to

8    say that plaintiff Witherow's conduct in these isolated instances resulted in a blanket consent to

9    monitoring of all of his calls.

10    Plaintiff Witherow claims in his affidavit attached to his motion for partial summary

11    judgment and his opposition to defendants' motion for summary judgment that the calls he placed

12    to plaintiff Evans and attorney Hager between May 1, 2007 and July 30, 2008, were attorney-client

13    calls (Ex. 1, #205-1, p. 2; #216, p. 3).  Defendants state that plaintiff Witherow only described five

14    incidents during which his "communications were allegedly intercepted and information was relayed

15    to third parties" and argue that none of the five incidents involves attorney-client privileged

16    communications (#207, p. 16).

17    Similarly, plaintiff explained in his deposition testimony that he believed his legal calls were

18    being monitored because he could hear beeping during the call (Ex. A, #207-1, p. 39).  Plaintiff

19    Witherow also states that after making deliberately inflammatory remarks during a call he thought

20    defendant Baker was monitoring, she treated him differently.  *Id.* at 82-83.  Plaintiff Witherow

21    believes this is proof of her monitoring.  *Id.*  Defendants argue that plaintiff Witherow "has never

22    'established beyond any doubt' that his calls were being monitored and the closest he has ever come

23    is speculation based on his own paranoia" (#220, p. 6).  Likewise, defendants point out that plaintiff

24    Witherow's "own sworn statement is as to what was happening in the Unit 13 control room . . . is

25    not evidence based on personal knowledge or fact" (#212, p. 19).

26    While defendants are correct that plaintiff Witherow does not have personal knowledge as

27    to what occurred in the Unit 13 bubble, he has presented evidence of his observation of beeping

28    during his calls and his assertion that the calls he believes were monitored were indeed legal calls.

28

1   The court notes that NRS § 209.419(2) states that a periodic sound heard by both parties during

2   telephonic communication is deemed notice of interception, which comports with plaintiff

3   Witherow's argument.  N.R.S. § 209.419(2).  Taken together, this evidence creates a disputed issue

4   of material fact.  Since the court cannot decide factual disputes on summary judgment, evidence of

5   the nature of the calls between plaintiff Witherow and his attorneys and the claim that defendants

6   monitored these calls in their entirety must be weighed by a trier of fact.  At trial, plaintiff can testify

7   to his belief that his calls were legal communication, not personal calls, and that he heard beeping

8   during the calls, which he believes to be evidence of monitoring.  Similarly, defendants can present

9   evidence that plaintiff did not exchange legal information during his calls and testimony that they

10  did not engage in extended monitoring of the calls.  The jury will weigh the evidence and credibility

11  of the witnesses and arrive at a conclusion.  Therefore, the court recommends that as to the allegation

12  that defendants violated plaintiff Witherow's rights under the Omnibus Crime Control and Safe

13  Streets Act by engaging in extended monitoring of his legal calls, summary judgment for both parties

14  be denied.

15                          iii.    Fourteenth Amendment

16          The Due Process Clause of the Fourteenth Amendment protects individuals from arbitrary

17  government action by prohibiting states from depriving people of "life, liberty, or property without

18  due process of law."  U.S. Const. amend. XIV.  To prevail on a claim of deprivation of liberty

19  without due process of law, a plaintiff must first establish the existence of a liberty interest.  After

20  meeting this threshold requirement, the plaintiff must then demonstrate that defendants failed to

21  provide the process due.  *Wolff v. McDonnell*, 418 U.S. 539 (1974).

22          Liberty interests may arise from the Due Process Clause itself or from state law.  *Hewitt v.*

23  *Helms*, 459 U.S. 460, 466-68 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515

24  U.S. 472 (1995).  Under *Sandin*, a factual comparison must be made between the conditions in

25  general prison population and the challenged condition, "examining the hardship caused by the

26  prisoner's challenged action in relation to the basic conditions of life as a prisoner."  *Jackson v.*

27  *Carey*, 353 F.3d 750, 755 (9th Cir. 2003).  There is no single standard for this comparison; instead,

28  courts examine the "condition or a combination of conditions or factors" case-by-case.  *Kennan v.*

                                            29

1   *Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996).  Specifically, courts consider three factors in undertaking

2   this analysis: (1) whether the challenged conduct "mirrored those conditions imposed upon inmates

3   in administrative segregation and protective custody" demonstrating that the prison acted within its

4   discretionary authority; (2) the duration of the challenged conduct; and (3) whether the conduct will

5   affect the length of the prisoner's sentence.  *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

6         Plaintiff Witherow believes NRS § 49.055 and NRS § 209.419(4)(d) create a liberty interest

7   in confidential communication with his attorneys and that his interest was violated when defendants

8   intercepted his legal calls without a search warrant (#205, p. 14; Ex. A, #207-1, p. 77).  Defendants

9   state that plaintiff Witherow "cannot show that any of his liberty or property interests were actually

10  denied as [he] cannot show that any actual attorney-client privilege was violated or that

11  conversations were overhead and disclosed to third parties and resulted in harm to [him]" (#207, p.

12  25).

13        Based on the analysis above dismissing plaintiff Evans's constitutional claims, the court only

14  considers plaintiff Witherow's claim for violation of the Fourteenth Amendment.  For plaintiff

15  Witherow to state a Fourteenth Amendment claim, he must show that the practice of initially

16  screening calls and the alleged extended monitoring of his calls resulted in an "atypical and

17  significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

18  As discussed at length above, the practice of initially screening his calls to determine if they are legal

19  certainly does not present such a hardship.  Further, plaintiff fails to allege specific facts showing

20  how the alleged extended monitoring of his calls caused him to suffer a hardship, nor does plaintiff

21  Witherow cite to any law on point to suggest that he has a liberty interest in these calls.  Even if

22  plaintiff did allege such facts, and the court found that he had a liberty interest in his calls to his

23  attorneys, the process plaintiff Witherow asserts that he is due is a search warrant. Plaintiff Witherow

24  has conflated his Fourteenth Amendment claim and Fourth Amendment and statutory claims, since

25  a search warrant is a remedy for violations of these offenses, but not a remedy for a Fourteenth

26  Amendment cause of action.

27        Accordingly, the court recommends that defendants' motion for summary judgement on

28  plaintiff Witherow's Fourteenth Amendment claim be granted and plaintiff Witherow's motion for

1    partial summary judgment for the same be denied.

2            **d.      Failure to Properly Respond to Grievances Claims**

3            The denial of a grievance does not in itself rise to the level of a constitutional violation.

4    *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th

5    Cir. 1988)), *cert. denied* 541 U.S. 1063 (2004); *see also Lomolt v. Holder*, 287 F.3d 683, 684 (8th

6    Cir. 2002); *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that prison official's denial

7    of a grievance cannot be  grounds for liability under section 1983).

8            Plaintiff Witherow claims that "interception and eavesdropping on [his] confidential

9    attorney/client telecommunications continued because of the failure of Defendants Henley, Donat,

10   or Helling to initiate any type of corrective action in the grievance process; thereby rendering these

11   Defendants responsible for the continued and ongoing interception" of Plaintiff Witherow's legal

12   calls.   Other than defendants' purportedly inadequate responses to plaintiff Witherow's

13   administrative grievances, plaintiff advances no factual allegations to support the notion that any of

14   these defendants intercepted plaintiff Witherow's calls or engaged in any affirmative acts that

15   violated his rights in connection with the grievance process.

16           Therefore, the court recommends that defendants' motion for summary judgment on plaintiff

17   Witherow's claims against defendants Henley, Donat, and Helling for denial of his grievances be

18   granted and plaintiff Witherow's motion for summary judgment on the same be denied.

19           **e.      Supervisory Liability Claim**

20           "Liability under [§] 1983 arises only upon a showing of personal participation by the

21   defendant.  A supervisor is only liable for the constitutional violations of . . . subordinates if the

22   supervisor participated in or directed the violations, or knew of the violations and failed to act to

23   prevent them.  There is no respondeat superior liability under [§] 1983." *Taylor v. List*, 880 F.2d

24   1040, 1045 (9th Cir. 1989) (citations omitted); *see also Hydrick v. Hunter*, 500 F.3d 978, 988 (9th

25   Cir. 2007); *Ortez v. Washington Cnty., State of Or.*, 88 F.3d 804, 809 (9th Cir. 1996) (concluding

26   it is proper to dismiss where there are no allegations of knowledge of or participation in an alleged

27   violation).

28           Plaintiff Witherow claims that defendant Skolnik should be held liable for his failure to adopt

31

1   regulations to prevent NDOC officials from intercepting and eavesdropping on legal calls and for

2   failing to train employees appropriately (#216, p. 10).   Likewise, plaintiff Witherow claims

3   defendants Henley, Donat, and Helling failed to train their subordinates in the proper procedures for

4   telephone calls.  *Id.*  Plaintiff Witherow relies on various interrogatory responses from defendants

5   in which they state that they read and reviewed AR 718 and relevant post orders, but did not

6   necessarily attend formal training on the topic of attorney-client calls (Ex. 2, #205-2, p. 3; Ex. 4,

7   #205-4, p. 3; Ex. 6, #205-6, pp. 3-4 & Ex. 7, #205-7, p. 3).   Defendants state that plaintiff

8   Witherow's motion is "silent as to how Defendant Skolnik failed to properly train or supervise

9   Defendants Baker and Connally" (#212, p. 19).  Plaintiff Witherow also did not allege any facts to

10  suggest that defendant Skolnik knew of the alleged extended monitoring.  *Id.*

11       First, plaintiff does not demonstrate how defendant Skolnik failed to implement policies or

12  procedures that protect attorney-client communications.  The cited regulations and post order clearly

13  state that prison officials are not to listen to known legal calls.  Again, the brief screening process

14  that occurred in Unit 13, during which time the post order permitted officers to listen to the initial

15  greeting and enough information to determine that a call is legal, does not compromise an inmate's

16  confidential communication with his attorney.  Throughout these motions and oppositions, plaintiffs

17  fail to recognize the distinction between general communication between a lawyer and his client and

18  privileged information.  The attorney-client privilege does not include all communication between

19  a client and his lawyer, and the court is quite certain that it was not intended to protect the exchange

20  of simple greetings.   The court finds plaintiffs' arguments to the contrary to be without merit.

21  Therefore, the court recommends that summary judgment be awarded to defendants on plaintiff

22  Witherow's claim that defendant Skolnik failed to adopt appropriate policies and against plaintiff

23  Witherow on the same.

24       Second, defendants Skolnik, Henley, Donat, and Helling cannot be held liable for the acts

25  of their subordinates absent evidence they were aware of such wrongdoing, that they sanctioned or

26  permitted it to continue, or showing that they took affirmative steps to violate plaintiff's

27  constitutional rights. Plaintiff Witherow's assertion that defendants' wrongdoing was the failure to

28  properly train their subordinates fails, as he offers no evidence to substantiate these claims.  The

1   interrogatory responses to which plaintiff Witherow refers all state that the staff read the applicable

2   ARs and post orders.  Plaintiff fails to allege any facts or specific argument as to why this review of

3   the relevant regulations and procedures is inadequate.  The court declines to speculate on plaintiff

4   Witherow's behalf as to the relevance of these interrogatory responses with respect to his claims of

5   supervisory liability.  Therefore, the court recommends that summary judgment be awarded to

6   defendants on plaintiff Witherow's claims for supervisory liability against defendants Skolnik,

7   Henley, Donat, and Helling and against plaintiff Witherow on the same claim.

8               *h.    Damages*

9           The court recommends granting summary judgment in favor of defendants on all claims,

10  except for plaintiff Witherow's claims that defendants violated his rights under the Omnibus Crime

11  Control and Safe Streets Act by engaging in extended monitoring of his legal calls.  Plaintiff Evans

12  is not entitled to any damages, as he has no remaining claims.  Should plaintiff Witherow prevail at

13  trial on his remaining claims, he would only be entitled to damages available under the Omnibus

14  Crime Control and Safe Streets Act.  Damages under the Act include:

15      (b)  Relief.  In an action under this section, appropriate relief includes –
            (1) such preliminary and other equitable or declaratory relief as may be
16      appropriate;
            (2) damages under subsection (c) and punitive damages in appropriate cases;
17      and
            (3) a reasonable attorney's fee and other litigation costs reasonably incurred.
18
        (c)  Computation of damages.
19      . . .
            (2) In any other action under this section, the court may assess as damages
20          whichever is the greater of –
                (A) the sum of the actual damages suffered by the plaintiff and any
21              profits made by the violator as a result of the violation; or
                (B) statutory damages of whichever is greater of $100 a day for each
22              day of violation or $10,000

23  28 U.S.C. § 2520(b-c).

24          The parties agree that plaintiff Witherow is no longer entitled to injunctive relief (#216, p.

25  25).  Defendants do not specifically address damages under the Act.  Rather, they argue that plaintiff

26  Witherow is not entitled to compensatory damages because he failed to allege a physical or actual

27  injury, which is required to recover compensatory damages for constitutional violations (#207, pp.

28  26-27).  Further, defendants believe plaintiff Witherow's request for punitive damages fails because

1    "Plaintiff Witherow has only provided conclusory accusations supporting his claim for punitive

2    damages." *Id.* at 28.  Plaintiff argues he "is entitled to liquid [sic] damages in the amount of $10,000

3    for a single violation of his right to be free from an interception an attorney client

4    telecommunication," and is not required to show actual damages (#216, p. 25).  He goes on to claim

5    that a jury should determine whether defendants' conduct gives rise to punitive damages.  *Id.*

6    Defendants agree that a jury would be afforded the opportunity to determine the amount of punitive

7    damages, but argue that "Plaintiff does not actually have any evidence to submit to the jury to

8    establish punitive damages" (#220, p. 16).  Defendants go on to explain that if he had such evidence,

9    he should have presented these facts during discovery.  *Id.*

10         Plaintiff Witherow is seeking statutory and punitive damages available under the Omnibus

11   Crime Control and Safe Streets Act.  He does not contend that he has actual damages with respect

12   to the Act.  Instead, he argues that he does not need to prove actual damage for the Act; therefore,

13   he offers no evidence to support actual damages. Upon review of the statutory language, the court

14   agrees with plaintiff Witherow and finds that he may proceed under 28 U.S.C. § 2520(c)(2)(B).

15   With respect to the availability of punitive damages, the court again agrees with plaintiff Witherow.

16   Without commenting on the quality of plaintiff Witherow's evidence with respect to punitive

17   damages, the court notes that although defendants would not characterize any of the defendants'

18   conduct as malicious, oppressive, or reckless, the relevant inquiry is whether the trier of fact, upon

19   review of the evidence and testimony presented at trial, finds that defendants' conduct gives rise to

20   punitive damages.

21         Therefore, the court recommends that summary judgment be granted in favor of defendants

22   with respect to plaintiff Witherow's request for injunctive relief.  However, the court recommends

23   that with respect to statutory and punitive damages available under the Act, summary judgment in

24   favor of defendants be denied.  The court notes that this discussion of damages is limited to the

25   damages available to plaintiff Witherow for his sole remaining claims - violations of his rights under

26   the Omnibus Crime Control and Safe Streets Act for defendants' alleged extended monitoring of his

27   legal calls.  Plaintiff Witherow is foreclosed from seeking damages for any alleged constitutional

28   violations, as the court recommended summary judgment for these claims.

1

**III. CONCLUSION**

2 Based on the foregoing and for good cause appearing, the court recommends the following:

3 (1) Plaintiff Witherow's motion for leave to substitute specific names of Doe defendants (#204) be

4 **DENIED**;

5 (2) Plaintiff Witherow's motion for partial summary judgment (#205) be **DENIED**;

6 (3) Defendants' motion for summary judgment on Witherow's second amended complaint (#207)

7 be **GRANTED**, **EXCEPT** as to plaintiff Witherow's claim that defendants violated plaintiff

8 Witherow's rights under the Omnibus Crime Control and Safe Streets Act by engaging in extended

9 monitoring of his legal calls for which the court recommends that summary judgment be **DENIED**;

10 and

11 (4) Defendants' motion for summary judgment on Evans's first amended complaint (#206) be

12 **GRANTED**.

13 The parties are advised:

14 1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,

15 the parties may file specific written objections to this Report and Recommendation within fourteen

16 days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and

17 Recommendation" and should be accompanied by points and authorities for consideration by the

18 District Court.

19 2. This Report and Recommendation is not an appealable order and any notice of appeal

20 pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

21

**IV.  RECOMMENDATION**

22 **IT IS THEREFORE RECOMMENDED** that Plaintiff Witherow's motion for leave to

23 substitute specific names of Doe defendants (#204) be **DENIED**.

24 **IT IS FURTHER RECOMMENDED** that Plaintiff Witherow's motion for partial summary

25 judgment (#205) be **DENIED**;

26 **IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment on

27 Witherow's second amended complaint (#207) be **GRANTED**, **EXCEPT** as to plaintiff Witherow's

28 claim that defendants violated plaintiff Witherow's rights under the Omnibus Crime Control and

1  Safe Streets Act by engaging in extended monitoring of his legal calls for which the court

2  recommends that summary judgment be **DENIED**.

3      **IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment on

4  Evans's first amended complaint (#206) be **GRANTED.**

5      **DATED**: July 29, 2011.

_____

**UNITED STATES MAGISTRATE JUDGE**