# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

DONALD YORK EVANS et al., )
)
        Plaintiffs, )
)   3:08-cv-00353-RCJ-VPC
      vs. )
)
HOWARD SKOLNIK et al., )   **ORDER**
)
        Defendants. )
)

## I.    PROCEDURAL HISTORY

Plaintiffs Donald York Evans and John Witherow filed the Complaint in June 2008 alleging that Defendants illegally intercepted privileged communications between Attorney Evans and his client, Withrow, who was in the custody of the Nevada Department of Corrections ("NDOC") at Nevada State Prison ("NSP"). (*See* Compl., ECF No. 2). Plaintiffs listed as Defendants Inmate Calling Solutions ("ICS"), Howard Skolnik, Don Helling, William Donat, Brian Henley, and L. Baker. (*See id.*). The First Amended Complaint ("FAC") added Embarq and Global Tel*Link ("GTL") as Defendants. (*See* First Am. Compl., ECF No. 33). Evans stipulated to dismiss his claims against ICS. Witherow filed the Second Amended Complaint ("SAC"),[1] which listed 116 causes of action against ICS, Embarq, GTL, Skolnik, Helling, Henley, Lea Baker, and I. Connally. (*See* Second Am. Compl., ECF No. 80). The first and second causes of action were for declaratory and injunctive relief, respectively. The third

---

[1] Witherow filed the SAC *in pro se*. The Court treated the SAC as applying only to Witherow and treated the FAC as continuing to apply to Evans.

through one-hundred-and-fourteenth causes of action alleged violations of the Fourth Amendment and the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511, by Baker's and Connally's interceptions of attorney–client communications between Witherow and his various attorneys between May 8, 2007 and July 30, 2008. The one-hundred-and-fifteenth cause of action was a failure-to-train claim against Skolnik. The one-hundred-and-sixteenth cause of action was a respondeat superior claim against Henley, Donat,[2] and Helling.

Embarq, ICS, and GTL separately moved to dismiss. Witherow opposed the motions, but Evans failed to oppose them, and the Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the Court grant the motions as against Evans because he failed to oppose them[3] and as against Witherow because he had not sufficiently alleged movants were state actors or that they intentionally intercepted his communications. The Court adopted the R&R and granted the motions to dismiss, later clarifying that Witherow did not have leave to amend. At that stage, the following claims remained: (1) Witherow had 116 claims under the SAC against Skolnik, Helling, Henley, Donat, Baker, and Connally; and (2) Evans had three claims under the FAC against Skolnik, Helling, Henley, Donat, and Baker.

The Magistrate Judge later issued a thirty-six-page R&R as to Witherow's motions to amend and for partial summary judgment and Defendants' motions for summary judgment. The Magistrate Judge recommended denying Witherow's motions and granting Defendants' motions, except as to Witherow's claim for illegal initial screening under the ECPA. The Magistrate Judge found that Witherow had exhausted his administrative remedies, that Evans had no standing to assert constitutional violations of the attorney–client privilege apart from Witherow,

---

[2] Although listed in this cause of action and under the "Parties" section of the SAC, Donat is not listed in the caption of the SAC.

[3] ICS's motion was moot as against Evans, because Evans had already stipulated to dismiss his claims against ICS.

that Evans had no standing to assert claims based upon failures to investigate Witherow's grievance(s), that Plaintiffs had no constitutional claims because they had no reasonable expectation of privacy in calls they knew were being monitored, that Evans's potential claim against Baker under the ECPA was futile because discovery sanctions prevented him from presenting evidence sufficient to prove it, that Witherow's claims under the ECPA were precluded insofar as they alleged initial screening violations because it was clear he received the requisite notice, that there remained genuine issues of material fact whether Defendants engaged in extended monitoring of Witherow's calls in violation of the ECPA, that no liberty interest had been violated supporting a due process violation, and that no claims lied for failure to respond to grievances or for supervisory liability. The Magistrate Judge noted that Witherow was no longer entitled to injunctive relief, but that he could seek damages under the ECPA. The Hon. Gloria M. Navarro adopted the R&R.

The case was reassigned to this Court for trial. The jury returned a verdict for Defendants. Plaintiffs appealed. The Court of Appeals affirmed in all respects but one: it reversed and remanded for further proceedings as to the Fourth Amendment claims, ruling that this Court should examine those claims in the first instance under the "normative inquiry" approach, *see United States v. Scott*, 450 F.3d 863, 867 (9th Cir. 2005), not the "reasonable expectation of privacy" approach, with appropriate deference to Defendants in light of any legitimate penological concerns, *see Turner v. Safley*, 482 U.S. 78, 89 (1987). The mandate has issued, and the Court now conducts the required analysis.

**II.     DISCUSSION**

The Court finds that the Fourth Amendment claims fail. As the Court of Appeals has ruled, Plaintiffs' expectation of confidential attorney–client communications cannot have been destroyed by subjective knowledge that the "well-recognized" right of private attorney–client communications had in reality been compromised by monitoring. *See Scott*, 450 F.3d at 867

(quoting *Smith v. Maryland*, 442 U.S. 735, 740 n.5 (1979)).  However, the legitimate penological interests of ensuring that the right to confidential attorney–client communications is not abused and that contraband information is not sent out of the prison makes the practice of periodically "checking in" on the calls of inmates after initial screening to ensure they are still privileged, i.e., that the attorney has not handed the telephone over to a non-attorney such as a family member or even a criminal confederate once the parties have become confident monitoring has ceased, constitutionally reasonable.

Prison regulations generally survive constitutional challenges if they are "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.  The right at issue "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989) (quoting *Turner*, 482 U.S. at 85).  The *Turner* factors are: (1) whether the regulation is rationally related to a legitimate and neutral objective; (2) whether there are alternative means of exercising the right at issue; (3) the impact the requested accommodation will have on other inmates and prison staff; and (4) the existence of obvious, easy alternatives. *Id.* at 414–18.

As noted above, there is a legitimate penological interest in ensuring that the ability to make non-monitored calls is not abused, i.e., is not used except when speaking with an attorney about legal matters.  There is no "alternative means" of exercising the right at issue if the right is perceived as absolute.  But the right is not absolute.  In the prison context, the right may be abridged according to the contours defined by the standards of *Turner*.  Third and fourth, there are no obvious, easy alternatives, and ending the practice could destroy the ability of prison staff to prevent abuses, because periodic checks are the only feasible way, and probably also the least intrusive way, to ensure the right of privileged communications may be enjoyed without being abused short of permitting only in-person communications in the prison itself with pre-screened attorneys or sending prison guards to attorney's offices to confirm the identity of the call

recipient and guard the exterior of the room during the call to ensure no unauthorized parties partake in the call. Even then, the attorney could forward the call without the guard's knowledge, or a third party could join the call on another line. The former alternative would destroy the right of prisoners to make confidential telephone calls from prison, and the latter alternative would be prohibitively expensive and time consuming. Even an automated warning such as, "Attention, in ten seconds prison staff will join the call to reconfirm the identity of the recipient" would not work, because an attorney could be standing by to take the receiver in the event such a warning were announced, or a third party could simply pretend to be an attorney for a minute or so at the appropriate time. The periodic checks must be surreptitious, and indeed periodic as opposed to only initial, to be effective. Knowledge that only an initial check may ever be performed would invite abuse.

Even without the above analysis, the Court of Appeals has recently spoken to the issue in a highly analogous context, explicitly ruling that the *contents* of legal mail, not only the exterior of the envelope, may be inspected for contraband. *See Nordstrom v. Ryan*, 762 F.3d 903, 909 (9th Cir. 2014) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974)). That is, prison officials may "inspect" but not "read" legal mail:

> Corrections officials obviously have good reason to be on the lookout for contraband, escape plans, and other mischief that could jeopardize institutional security. Officials likewise have every right to *inspect* an inmate's outgoing legal mail for such suspicious features as maps of the prison yard, the times of guards' shift changes, and the like. Prison officials know what to look for. But *inspecting* letters and *reading* them are two different things, as the Supreme Court recognized in *Wolff v. McDonnell*. What prison officials don't have the right to do is read a confidential letter from an inmate to his lawyer. This is because it is highly likely that a prisoner would not feel free to confide in his lawyer such things as incriminating or intimate personal information—as is his Sixth Amendment right to do—if he knows that the guards are reading his mail.
>
> Reading legal mail—not merely inspecting or scanning it—is what Nordstrom alleges the Department of Corrections is doing, and it is what he seeks to enjoin. We hold today that his allegations, if true, state a Sixth Amendment violation.

*Id.* at 906 (citation omitted).

1        The question here is whether periodic "check-ins" of an attorney–client call constitute
2   "inspecting" or "scanning" the conversation (which is permitted) as opposed to "reading" it
3   (which is not).  The Court finds that the "check-ins" in this case were permitted "inspections."
4   Although extended monitoring of a legal telephone call, i.e., "listening to" it, would be analogous
5   to "reading" legal mail, periodic "check-ins" on legal telephone calls are analogous to
6   "inspecting" or "scanning" legal mail.  Just as with the mail in *Nordstrom*, there must be some
7   way for prison officials to "inspect" or "check" a telephone call for contraband communications
8   within the boundaries of *Turner* without "reading" or "listening to" it in the legal sense,
9   otherwise a prisoner could circumvent the recognized right of the prison to inspect
10  communications for contraband merely by utilizing a verbal rather than written form of
11  communication.  The permitted inspection of verbal legal communications such as telephone
12  calls must exceed merely approving the dialed number or confirming the identity of the initial
13  recipient, because inspections of written legal communications for contraband information such
14  as maps or guard shift times is permitted, *id.* at 909, and discovering these things necessarily
15  requires examining the contents of the letter to some extent, not merely examining the address on
16  the envelope.
17       Just as a prison official inspecting legal mail may look at it briefly to determine whether
18  there is any contraband communications,[4] a prison official may conduct analogously limited
19  periodic checks of verbal legal communications for the same purpose.  The Court is confident
20  that neither the majority nor the dissent in *Nordstrom* would find any constitutional violation in
21  the present case.  The majority would approve the "check-in" practice based on its distinction

---

[4] It necessarily follows from the Court of Appeals' distinction between "inspecting" and "reading" legal mail that a prison official's "inspection" may consist of perceiving and mentally processing the substance of some sampling of the entire communication in order to make a determination as to whether there is contraband present without the inspection constituting "reading" in the legal sense. *See id.* at 915–16 (Bybee, J., dissenting).

between "inspecting" and "reading," whereas the dissent would find the communications had been "read" but perceive no constitutional fault with that. In summary, brief, periodic checks (as opposed to extended monitoring) of attorney–prisoner telephone calls to reconfirm the legal nature of the telephone call or to inspect for contraband information does not violate the Constitution. That is all that happened here, and Defendants are therefore entitled to summary judgment against the Fourth Amendment claims as a matter of law.

## CONCLUSION

IT IS HEREBY ORDERED that the Clerk shall enter judgment in favor of Defendants on the Fourth Amendment claims and close the case.

IT IS SO ORDERED.

Dated this 16th day of February, 2016.

_____
ROBERT C. JONES
United States District Judge